SEGRETS, INC., Plaintiff, Appellee,

v.

GILLMAN KNITWEAR CO., INC.,
Defendant, Appellant.

No. 99–1552.

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1999.

Decided March 27, 2000.

Donald J. Mooney, Jr., with whom Linda E. Maichl, Benesch, Friedlander, Coplan & Aronoff LLP, Michael DeMarco, Daniel E. Rosenfeld, and Kirkpatrick & Lockhart LLP were on brief, for appellant.

Kurt S. Kusiak, with whom Ian Crawford, Anthony M. Mansfield, and Todd & Weld were on brief, for appellee.

Before TORRUELLA, Chief Judge, LYNCH and LIPEZ, Circuit Judges.

LYNCH, Circuit Judge.

This case involves a manufacturer that specializes in designer knock-offs or reinterpretations copying the designs of another manufacturer's popular sweaters. Segrets Inc., a designer and manufacturer of women's clothing, sued Gillman Knitwear Co., Inc., alleging that Gillman violated the Copyright Act, 17 U.S.C. § 101 et seq., by producing sweaters that infringed Segrets's copyrighted designs. The district court granted Segrets summary judgment on three issues: the validity of its copyrights, Gillman's actual copying of Segrets's designs, and infringement with respect to one Gillman sweater. After the court, relying on *Chappell & Co. v. Palermo Cafe Co.*, 249 F.2d 77 (1st Cir.1957), denied Gillman's motion for a jury trial, a magistrate judge conducted a three-day bench trial and concluded that two other Gillman sweaters infringed Segrets's designs, and that Gillman's infringement was willful. The magistrate awarded Segrets statutory damages of $67,000 and attorney's fees and costs of $145,536.28. Thereafter, in 1998, the Supreme Court held there was a constitutional right to jury trial when statutory damages are claimed in copyright actions. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998).

Gillman appeals, arguing that the district court erred in granting summary judgment; that the evidence was insufficient to support the court's findings of infringement; and that, in light of *Feltner*, the court erred in denying Gillman's request for a jury trial. Segrets concedes that *Feltner* requires that a jury decide the issue of damages, but argues that we should affirm the district court's findings on infringement and willfulness.

We affirm the district court's conclusion that two of Gillman's sweaters, the Christie I and the Christie II, infringed Segrets's Blanket Stitch design. We vacate and remand for a jury trial the court's determinations on the remaining issues: whether the stone-colored Charro sweater infringed Segrets's Primitive Patterns design, the willfulness of each instance of infringement, and statutory damages.[1]

## I.

Sigrid Olsen, founder and Creative Director of Segrets, and Dorian Lightbown, a

---

1. The district court should then determine the attorney's fees issue.

Segrets designer, created both the Blanket Stitch and the Primitive Patterns sweater designs. Segrets registered both designs with the U.S. Copyright Office and attached copyright notification tags to the sweaters. Segrets, which became a subsidiary of Liz Claiborne Inc. in 1999, typically sells its products to retailers such as Macy's, Orvis, and Nordstrom, specialty stores, and catalogue firms.

Gillman creates designer "knock-offs," imitating costlier designs at lower prices. Gillman typically sells its sweaters to more moderately priced stores such as J.C. Penney in this country and abroad. Some customers of the two companies were in common.

## A. *Segrets's Blanket Stitch Sweater*

Segrets began selling the Blanket Stitch sweater in mid–1993. Julie Smith, a Gillman designer, purchased a Blanket Stitch sweater and sent it to Gillman's overseas manufacturer. Following Smith's instructions, the manufacturer copied the Blanket Stitch sweater—changing only the color—to create samples of the Christie I sweater for Gillman. Smith did not think, according to her testimony, that there was copyright protection. The Blanket Stitch itself was produced in two different color patterns for different retailers. In the fashion industry it is common for designers to use other manufacturer's garments for inspiration. In early 1994, a Segrets customer saw the Christie I sweater in Gillman's catalog, sent the catalogue to Segrets, and Segrets notified Gillman that it believed that the Christie I infringed the Blanket Stitch design. Gillman had not yet sold any Christie I sweaters. In response to this communication from Segrets, Gillman's president, William Gillman, told the company's production manager, Teresa Chang, to make changes to the Christie I.

Chang, not herself a designer, spent two to three hours that night altering the Christie I design to create the Christie II. She made a few changes to the embellishments and embroidery, but not to the jacquard design. Gillman used the Christie II to fill orders from its catalog, which pictured the Christie I, since the catalogue was already out. Gillman never changed the picture in the catalog from the Christie I to the Christie II. Smith, Gillman's designer, said that "our major goal was to keep [the Christie II] the same as what we had—similar to what we had shown to our customers [the Christie I]." Few, if any, of Gillman's customers complained that they had not received the sweater depicted in the catalog. Gillman sold approximately 7,000 Christie II sweaters. No Christie I sweaters were sold.

Segrets, from its communications with Gillman, understood Gillman was changing the Christie I. Segrets asked to see the changes; Gillman declined.

Segrets notified Gillman in August 1994 that it believed the Christie II also infringed its design. Segrets filed this suit in October 1994. The complaint alleged that the Christie I and Christie II sweaters infringed Segrets's copyrighted Blanket Stitch design.[2] *See* 17 U.S.C. § 501(b) (authorizing the owner of a copyright "to institute an action for ... infringement").

## B. *Segrets's Primitive Pattern Sweater*

Meanwhile, Segrets had begun selling its Primitive Patterns sweater in January 1994. The sweater was produced in only one color pattern, in tones of gray, black, white, and off-white. Smith purchased a Primitive Patterns sweater and sent it to Gillman's overseas manufacturer in the spring of 1994 to use as a model for the production of Gillman's Charro sweater. Gillman marketed the Charro sweater in three color combinations (stone,

---

**2.** Segrets's complaint also included counts alleging that Gillman had violated the Lanham Act, 15 U.S.C. § 1125(a), which forbids false designations of origin, false descriptions, and dilution. Segrets is no longer pursuing these claims.

blue/chambray, and turquoise), and sold approximately 2,160 through July 1995.

In December 1994, Segrets learned of the Charro sweater and notified Gillman that it believed the sweater infringed the Primitive Patterns design. Segrets later amended its complaint to add a count of infringement with respect to the Charro sweater.

## C. Prior Proceedings

Segrets filed a motion for summary judgment and elected to seek statutory damages under 17 U.S.C. § 504(c) in lieu of actual damages. Gillman opposed Segrets's summary judgment motion and filed a partial summary judgment motion of its own.

 In order to prove each count of infringement, Segrets must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Lotus Dev. Corp. v. Borland Int'l, Inc.,* 49 F.3d 807, 813 (1st Cir.1995) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)) (internal quotation marks omitted). The first prong of *Feist,* Segrets's ownership of a valid copyright, is not in dispute. *Feist*'s second prong has two steps. The first step requires a plaintiff to prove that the defendant copied the plaintiff's copyrighted work as a factual matter (either directly or through indirect evidence). In the second step, the plaintiff must prove that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works "substantially similar." *Id.*

On September 26, 1996, the district court granted summary judgment in part. Specifically, the court granted summary judgment on the issues of: (1) the validity of Segrets's Blanket Stitch and Primitive Patterns copyrights (*Feist*'s first prong); (2) Gillman's actual copying of the Blanket Stitch design in its Christie I and II sweaters, and its actual copying of the Primitive

Patterns design in its Charro sweater (the first step of *Feist*'s second prong); and (3) the substantial similarity of Gillman's Christie I sweater to Segrets's Blanket Stitch design (the second step of the second prong). The court denied summary judgment for Segrets on the remaining issues: (1) the substantial similarity of Gillman's Christie II sweater to Segrets's Blanket Stitch design; (2) the substantial similarity of Gillman's Charro sweater to Segrets's Primitive Patterns design; (3) the willfulness of Gillman's infringing conduct with respect to the Christie I, and with respect to any other potentially infringing conduct; and (4) damages and any other aspects of an appropriate remedy.

Following the summary judgment ruling, Gillman moved for a jury trial on the remaining liability issues and statutory damages. The district court denied Gillman's motion, relying on *Chappell & Co.,* which held that a defendant has no right to a jury trial in a copyright suit for statutory damages, *see* 249 F.2d at 81. Under the case law, there was a right to jury trial if the plaintiff claimed actual damages. *See Feltner,* 523 U.S. at 346, 118 S.Ct. 1279 (citing cases). Like this court, most circuits to consider the issue had, however, carved out an exception to the jury trial right for statutory damages cases. *See Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,* 106 F.3d 284, 293 (9th Cir.1997) (collecting cases), *rev'd sub nom. Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[C][1] (1999) (*Nimmer on Copyright*).

The issues not decided on summary judgment were tried before a magistrate judge. In an able opinion, the magistrate judge found that Gillman's Christie II sweater was substantially similar to Segrets's Blanket Stitch design; that Gillman's Charro sweater in the "stone" color combination was substantially similar to Segrets's Primitive Patterns design; and

that Gillman's infringement of Segrets's copyrights was willful. The magistrate also found that the Charro sweater in two other color combinations (blue/chambray and turquoise) did not infringe the Primitive Patterns design.[3] Segrets was awarded $67,000 in statutory damages and $145,536.28 in attorney's fees.

## II.

### A. *Summary Judgment*

Issues properly decided on summary judgment need not be remanded for the jury trial recognized by *Feltner.* *See Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,* 152 F.3d 1171, 1171–72 (9th Cir.1998) (*Feltner* decision did not require remand for jury trial on issue of liability, which had been decided on summary judgment). Thus we turn to the propriety of the summary judgment rulings.

The district court granted Segrets summary judgment on several issues: the validity of its copyrights; Gillman's actual copying of Segrets's Blanket Stitch and Primitive Patterns designs; and the Christie I sweater's substantial similarity to the Blanket Stitch design. On appeal, Gillman contends that the trial court erred in granting summary judgment on the issue of infringement by the Christie I. First, Gillman argues that the fact that it referred to the copyrighted Blanket Stitch design while it was designing the Christie I should not create an inference of infringement. Referring to other designers' garments during the design process is a common industry practice. Second, Gillman asserts that the trial court failed to focus on the "protectible elements" of the Blanket Stitch design when it determined that the Christie I was substantially similar to it. In Gillman's view, the elements of the Blanket Stitch design that had been commonly used in earlier designs are un-

protectible. Finally, Gillman argues that color differences are significant in determining substantial similarity, and the color differences between the Blanket Stitch and Christie I designs were at least significant enough to prevent Segrets from prevailing on summary judgment. Gillman also claims that the trial judge's statement that he was partially color-blind demonstrates that he was unable to apply the substantial similarity test to the photographs of the sweaters submitted as part of the summary judgment papers.

█ Our review of the entry of summary judgment is de novo. *See Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 428 (1st Cir.2000). That the matter was resolved on cross motions does not change this standard of review. *See Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir.1996). Given this standard, Gillman's criticisms of the means by which the district court reached its conclusions on summary judgment are largely beside the point.[4]

█ The district court's first conclusion—that Segrets's Blanket Stitch and Primitive Patterns copyrights are valid—is unchallenged. As for the court's second conclusion, that Gillman copied Segrets's designs, this case—somewhat unusually—provides direct evidence of copying by the defendant. *See Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992) (referring to "the rare scenario where there is direct evidence of copying"). Gillman criticizes the holding that it actually copied the Blanket Stitch (as to Christie I and II) and Primitive Patterns designs (as to Charro) by saying that referring to a copyrighted garment during the design of another garment does not create an inference of infringement. Our review of the undisputed evidence, however, shows that Gillman did much more than merely "refer to" Seg-

---

**3.** Segrets has not cross appealed from this determination.

**4.** Thus, we pretermit the issue of the trial judge's partial color blindness except to note that this is true of a large portion of the population.

rets's designs. The uncontradicted testimony of Gillman's own designer, Julie Smith, indicates that she purchased both the Blanket Stitch and Primitive Patterns sweaters and sent them to an overseas manufacturer for use as models for Gillman's sweaters. The Christie I was directly copied from the Blanket Stitch design, and the Charro was a variation of the Primitive Patterns design.

Furthermore, there are unquestionably "sufficient articulable similarities to justify a finding that the defendant has copied from the protected work." *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 608 (1st Cir.1988). Indeed, other than color, it is difficult to find any articulable *differences* between the Christie I and the Blanket Stitch design. The geometric patterns, the stitching, and the number and arrangement of the buttons all appear identical.

Unlike the Christie I, the Christie II is not a virtually identical copy of the Blanket Stitch design. The Christie II does, however, retain more than enough similarities to the Blanket Stitch design to mandate the conclusion that it is also the product of copying.

The same is true of the Charro. Many of the patterns in the Charro sweater are strikingly similar to those found in the intricate Primitive Patterns design, and the patterns are arranged in a similar order. Thus, there are no genuine issues of material fact as to the first step of *Feist*'s second prong—Gillman's copying of both of Segrets's copyrighted designs— and summary judgment on that issue was appropriate.

Gillman also attacks the district court's holding on summary judgment that the Christie I is substantially similar to the Blanket Stitch design. Whether two works are substantially similar is determined by the "ordinary observer" test. *Id.* at 607 (internal quotation marks omitted). "The test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Id.* (quoting *Educational Testing Servs. v. Katzman*, 793 F.2d 533, 541 (3d Cir.1986)) (internal quotation marks omitted).

Applying the ordinary observer test, the undisputed evidence mandates the conclusion that the Christie I design is substantially similar to the Blanket Stitch design. The designs are virtually identical, the sole noticeable difference being the colors. Gillman cannot copy the intricate patterns and juxtapositions of the Blanket Stitch design virtually line-for-line and then escape liability for infringement merely by changing the color and saying this necessarily destroys any substantial similarity. *See Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1094 n. 6 (2d Cir.1977), *cited in Concrete Machinery*, 843 F.2d at 610. Color may be a factor, among others, in determining substantial similarity in clothing designs. But that does not assist Gillman's case. Even considering the color variation, there was substantial similarity.

Based on de novo review of the evidence presented in summary judgment, we affirm the district court's grant of summary judgment on Gillman's actual copying of the Blanket Stitch and Primitive Patterns designs, and on the substantial similarity of the Christie I to the Blanket Stitch design. While summary judgment for a plaintiff on these issues is unusual, *see* 3 *Nimmer on Copyright* § 12.10[A], at 12–150 to 12–151, it is warranted on these facts, *cf. Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir.1995) (affirming grant of summary judgment to plaintiff on the issue of substantial similarity); *Rogers*, 960 F.2d at 308 (same).

### B. *Issues Decided After the Bench Trial*

*Feltner* held that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory

damages under § 504(c) of the Copyright Act, including the amount itself." 523 U.S. at 355, 118 S.Ct. 1279. Gillman argues that *Feltner*'s holding must be applied retroactively to this case, and that even if we do not reverse the district court's summary judgment rulings, we must vacate and remand for a trial by jury on all remaining issues.

■ Retroactive application of *Feltner* is required. In *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the Supreme Court held that its "application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision." *Id.* at 90, 113 S.Ct. 2510. The Court applied the rule it announced in *Feltner* to the parties before it. *See Feltner,* 523 U.S. at 355, 118 S.Ct. 1279. Segrets concedes that *Feltner* requires that a jury determine the amount of statutory damages. In Segrets's view, however, that is the only issue that must be remanded to a jury, for several reasons. Segrets argues that it is unnecessary to remand the lower court's findings after the bench trial that the Christie II design was substantially similar to the Blanket Stitch design, and that the Charro design in the stone color combination was substantially similar to the Primitive Patterns design. Segrets first asserts that this court has authority to review substantial similarity de novo (although we have never held this), and so it follows that a remand is unnecessary.

In addition, Segrets contends that on any issue as to which a directed verdict would have been appropriate, a remand for a jury trial is not needed. This is true, Segrets says, both as to the findings of substantial similarity and willfulness. Segrets says that evidence was presented at the bench trial which was not presented on summary judgment. Thus, even if the decision to deny summary judgment on these issues was correct (which Segrets

does not concede), there would be no anomaly in a directed verdict at the bench trial on both issues.

The premise of Segrets's first argument is that we would accept the Second Circuit's de novo approach to appellate review of the substantial similarity issue. We noted, but did not resolve the issue, in *Matthews v. Freedman,* 157 F.3d 25, 28 n. 3 (1st Cir.1998), and need not do so here. In *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759 (2nd Cir.1991), the court held:

> In considering substantial similarity between two items, we review the district court's findings *de novo*—not on the clearly erroneous standard—because what is required is only a visual comparison of the works, rather than credibility, which we are in as good a position to decide as was the district court.

*Id.* at 766. *Folio* was a non-jury case and affirmed the district court's determination, following bench trial, that there was no substantial similarity between two fabric designs. *See id.* at 762, 766. We have found no Second Circuit cases applying this standard to a finding of substantial similarity by a jury.

Several other circuits have rejected de novo review after trial of "substantial similarity" and similar findings in intellectual property cases. In *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502 (7th Cir.1994), the Seventh Circuit said that it followed "the clearly erroneous standard" but also said that the appellate court itself would engage in "side-by-side" comparison and "ocular comparison." [5] *Id.* at 506 n. 1.

Other circuits have adhered to clearly erroneous review. *See, e.g., Kepner–Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 532–33 (5th Cir.1994); *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222, 1233 & n. 25 (3d Cir.1986); *Original Appalachian Artworks, Inc. v.*

**5.** Nimmer views this purported adherence to the clearly erroneous standard as a formalism. *See* 3 *Nimmer on Copyright* § 12.12, at 12–189.

*Toy Loft, Inc.,* 684 F.2d 821, 825 & n. 4, 830 (11th Cir.1982); *Williams v. Kaag Mfrs., Inc.,* 338 F.2d 949, 951 (9th Cir. 1964) ("We have commented frequently on the inappropriateness of substituting our judgment for that of the trial judge on questions of fact. The more vague the test, the less inclined are we to intervene.").

We have treated the question of substantial similarity as a "mixed question of fact and law." *O'Neill v. Dell Publ'g Co.,* 630 F.2d 685, 687 (1st Cir.1980). In so doing we have also compared the two items at issue. *See id.* at 690 (comparing two novels and saying "[a]lthough we may not be qualified literary critics, we are fitted by training and experience to compare literary works and determine whether they evidence substantial similarity"); *see also Grubb v. KMS Patriots, L.P.,* 88 F.3d 1, 2 (1st Cir.1996) (court itself comparing design to allegedly infringing team logo). The question of the appellate standard of review of the issue of substantial similarity is ultimately one of how much deference is given to the trier of fact. It is of a kind with other situations where the appellate court has before it undisputed documents or photographs, there are no credibility determinations, and there is no expert testimony. In such situations, it could equally well be said that the appellate court's role in determining whether there was error has simply been made easier, not that the standard of review is different.

[8–10] That question of deference, it strikes us, is different in kind from the question of whether a party may be deprived of its constitutional right to a jury trial simply because an appellate court may be in as good a position as the trier of fact to draw the needed conclusions about substantial similarity. First, even as to bench trials, Rule 52(a), Fed.R.Civ.P., requires that deference be given on appeal to a trial judge's factual findings, regardless of whether there are credibility findings. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 573–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Second, appellate judge-made rules as to deference in standards of review cannot trump a constitutional right. Even when independent appellate review[6] has been thought to be constitutionally required, as in some First Amendment cases, *see Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557, 567–68, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995); *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 510–11, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), the Supreme Court has never suggested this casts doubt on the underlying jury trial right. And so Segrets's first argument against remand for a jury trial fails.

Segrets's alternative argument does provide a basis under which remand may be unnecessary. The denial of a jury trial is harmless error if the evidence meets the standard for a directed verdict.[7] *See In re N–500L Cases,* 691 F.2d 15, 25 (1st Cir.1982); *see also Frost v. Agnos,* 152 F.3d 1124, 1131 (9th Cir.1998); *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998); 9 Wright & Miller, *Federal Practice and Procedure* § 2322, at 175 & n. 6 (1994 & Supp.1999). To determine whether judgment as a matter of law is appropriate, we review the magistrate's conclusions de novo, viewing the evidence in the light most favorable to Gillman. *See Ferrara &*

---

6. "Independent review" is close to but not equivalent to de novo review. *See Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 514 n. 31, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *Daggett v. Commission on Governmental Ethics and Election Practices,* 205 F.3d 445, 451 (1st Cir.2000); *Veilleux v. National Broad. Co.,* 206 F.3d 92, 107 (1st Cir.2000).

7. *Feltner* does not require that issues properly decided on summary judgment be remanded to a jury. Similarly, a directed verdict does not offend the Seventh Amendment right to trial by jury. *See Galloway v. United States,* 319 U.S. 372, 389, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943).

*DiMercurio, Inc. v. St. Paul Mercury Ins. Co.,* 169 F.3d 43, 53 (1st Cir.1999). The party opposing judgment as a matter of law must provide "more than a scintilla of evidence and may not rely on conjecture or speculation." *Id.* (quoting *Katz v. City Metal Co.,* 87 F.3d 26, 28 (1st Cir.1996)) (internal quotation marks omitted). The court "must not consider the credibility of witnesses, resolve the conflicts in testimony, or evaluate the weight of the evidence." *Id.* (quoting *Andrade v. Jamestown Hous. Auth.,* 82 F.3d 1179, 1186 (1st Cir.1996)) (internal quotation marks omitted). "A verdict may be directed only if, applying these standards, the evidence does not permit a reasonable jury to find in favor of" Gillman. *Id.* (quoting *Brennan v. GTE Gov't Sys. Corp.,* 150 F.3d 21, 26 (1st Cir. 1998)) (internal quotation marks omitted).

▮▮▮▮▮ Using that test, there is one issue which need not be remanded for a jury trial: that of the Christie II's substantial similarity to the Blanket Stitch design.[8] The magistrate judge held that the ordinary observer viewing the Christie II "would *inevitably* conclude that Gillman unlawfully appropriated the [Blanket Stitch] design" (emphasis added). Taking this as the equivalent of a directed verdict, and after comparing the photographs of the two works ourselves and reviewing the record, we agree. The Christie I is virtu-

ally identical to the Blanket Stitch design in every respect except color. The Christie II differs from Christie I and the Blanket Stitch design in a few details which are evident only on very close examination. Chang, the Gillman employee who made the changes, said that the patterns in the Christie II design were "majorly" identical to those in the Christie I. A row of diamond-shaped figures in the Blanket Stitch design has been changed to a row of arrows in the Christie II; in two areas, short diagonal lines have been added to the Christie II. The number and location of certain buttons has been changed as well.

These limited changes[9] do not overcome the conclusion of overall similarity the ordinary observer "inevitably" has on viewing the Christie II and the Blanket Stitch designs side-by-side. That is particularly so given the intricacy of the Blanket Stitch design. As held in *Concrete Machinery:*

Slight or trivial variations between works will not preclude a finding of infringement under the ordinary observer test. . . . At times, the existence of only minor differences may itself suggest copying, indicating that the infringer attempted to avoid liability by contributing only trivial variations. This is not to suggest that an artist cannot avoid infringement by intentionally making substantial alterations in the design of a

8. Gillman also argues that Segrets's failure to offer the Blanket Stitch sweater into evidence prevented the court from making the sort of side-by-side comparison required in determining substantial similarity, and that the district court erred in admitting instead photographs of the Blanket Stitch design. (The Christie I and Primitive Patterns sweaters were introduced into evidence.) The magistrate rejected this objection.

Determinations regarding the admissibility of photographs lie within the sound discretion of the district court. *See Lubanski v. Coleco Indus., Inc.,* 929 F.2d 42, 47–48 (1st Cir. 1991). We find no abuse of discretion. Photographs have been accepted and used in fabric design infringement cases. *See, e.g., Spectravest, Inc. v. Mervyn's, Inc.,* 673 F.Supp. 1486, 1489–90 (N.D.Cal.1987). The color photographs show both the front and the back

of the Blanket Stitch sweater in detail. Furthermore, the magistrate had the actual Blanket Stitch sweater before her during the three-day trial, although it was not made an exhibit. In fact, Gillman relied on photographs in its motion for partial summary judgment and could easily have introduced the Blanket Stitch sweater itself if it thought the sweater would be helpful to its claim of no substantial similarity.

9. Gillman offered evidence that it followed what it characterized as an industry rule of thumb that there was no copyright violation if at least five to seven changes were made in a garment. Segrets' witnesses denied there was any such rule of thumb. The legal test is the substantial similarity standard, described in the text, which focuses on the effect of the changes. Mechanical rules concerned with numbers of changes are not the legal test.

copyrighted work so as to provide a substantially different expression of the idea embodied in the copyrighted work. Yet, it is only when "the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are (within the context of plaintiff's work) of minimal importance either quantitatively or qualitatively, [that] no infringement results."

843 F.2d at 608 (quoting 3 *Nimmer on Copyright* § 13.03[B], at 13–43 (1987)) (citations omitted).

Further, the Christie II was pictured in sales catalogues by using the Christie I photograph, and the Christie I was identical in design to the Blanket Stitch. There was no evidence of customers returning Christie II sweaters because it was different from the sweater in the catalogue picture. Thus, in total, judgment for Segrets was appropriate on a directed verdict standard.

██ In contrast, the evidence of the substantial similarity of the Charro sweater in the stone color combination to the Primitive Patterns design does not meet the directed verdict standard. Nor did the magistrate judge say that the conclusion of substantial similarity was inevitable. As the magistrate judge noted, the differences between the Charro sweater and the Primitive Patterns design are more noticeable than those between the Christie II and the Blanket Stitch design. There are variations in the stitching, and some of the rows of patterns are arranged in a different order. Because the evidence could permit a reasonable jury to find in favor of either party, the question of the substantial simi-

larity of the Charro sweater in the stone color combination [10] to the Primitive Patterns design must be remanded.

Similarly, the issue of willfulness must be remanded to a jury. Although Segrets's evidence is quite strong, the issue of willfulness involves witness credibility, resolving conflicts in testimony, and evaluating the weight of the evidence—steps courts are not permitted to take in the directed verdict context.

Finally, as is undisputed, we must vacate and remand for a jury trial the determination of statutory damages. We decline to rule on Segrets's proposed list of undisputed facts with respect to damages. That is the province of the district court.

## III.

██ We *affirm* the district court's findings that Gillman's Christie I and Christie II sweaters infringed Segrets's Blanket Stitch design, and that Gillman copied Segrets's Primitive Patterns design. We *vacate* and *remand for a jury trial* [11] the remaining issues: whether the stone-colored Charro sweater is substantially similar to the Primitive Patterns design; the willfulness of the infringement of the Blanket Stitch design (and of the Primitive Patterns design, if the jury determines that Gillman has infringed it); and damages.

*So ordered.*

---

**10.** Because there was no cross appeal of Magistrate's determination against Segrets on the issue of the substantial similarity of the Charro sweater in the two other color combinations (blue/chambray and turquoise), we take that issue as concluded.

**11.** If the parties do not resolve this matter, and there is a new trial, we reiterate our rule that expert testimony on the topic of "sub-

stantial similarity" is not permissible. While expert testimony may be used to establish that there was copying (from evidence of substantial similarity), where factual copying has been established, as here, there should be no expert testimony to establish whether or not there was substantial similarity. *See Concrete Machinery*, 843 F.2d at 608. That is because the test is an "ordinary observer test."