T-Peg v. Isbitski, et al.          03-CV-462-SM  04/06/05
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


T-Peg, Inc. and
Timberpeg East, Inc.,
     Plaintiffs

     v.                                  Civil No. 03-cv-462-SM
                                         Opinion No. 2005 DNH 057
Stanley J. Isbitski,
Vermont Timber Works, Inc.
and Douglas S. Friant,
     Defendants


                         **O R D E R**


     Plaintiffs move for reconsideration of the court's order of

February 9, 2005, granting summary judgment in favor of

defendants.  Defendants Vermont Timber Works, Inc. ("VTW") and

Douglas Friant object.  Plaintiffs' motion for reconsideration is

granted, but, on reconsideration, plaintiffs' additional requests

for relief are denied, and the court's previous order stands.


                   **The Legal Standard**

     "Under Fed. R. Civ. P. 59(e) a court may alter or amend a

judgment based on a manifest error of law or fact or newly

discovered evidence."  Zukowski v. St. Luke Home Care Program,

326 F.3d 278, 282 n.3 (1st Cir. 2003) (internal quotation marks

omitted) (quoting <u>Aybar v. Crispin-Reys</u>, 118 F.3d 10, 16 (1st Cir. 1997)).

**Question of Law: Impact the AWPA**

Prior to the 1990 enactment of the Architectural Works Protection Act ("AWPA"), architectural plans were given copyright protection under 17 U.S.C. § 102(a)(5), as "pictorial, graphic, and sculptural works."  The AWPA created a new category of authorship subject to copyright protection: "architectural works."  17 U.S.C. § 102(a)(8).

> An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings.  The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101.  The legislative history of the AWPA makes it clear that "[a]n individual creating an architectural work by depicting that work in plans or drawing will have two separate copyrights, one in the architectural work (section 102(a)(8)), the other in the plans or drawings (section 102(a)(5))."  H.R. REP. 101-735, at 19, <u>reprinted in</u> 1990 U.S.C.C.A.N. at 6950.  The

AWPA created a new category of protectable works, but did not, on its face, create a new category of infringing acts or infringing works.

It was well established under pre-AWPA decisional law that "a building [was] not a 'copy' of the underlying plans, with the result that construction of the structure [did] not constitute infringement." 1 NIMMER ON COPYRIGHT § 2.08[D][2][a] at 2-124 (Rel. 63, Apr. 2004). Plaintiff contends, and defendant appears to concede, that while a building cannot be a copy of an architectural plan protected as a pictorial or graphic work pursuant to 17 U.S.C. § 102(a)(5), a building can be a copy of a building design protected as an architectural work pursuant to § 102(a)(8). However, no court has so held. In Hunt v. Pasternack, 192 F.3d 877 (9th Cir. 1999), the only issue before the court was "whether the district court erred as a matter of law in ruling that a valid copyright in an architectural work can subsist only in a work that has been constructed." Id. at 879. In other words, the Hunt court did not decide whether a building can be a copy of a copyrighted architectural work.

Moreover, the Hunt court's characterization of the legislative history of the AWPA does not support the proposition that a building can be a copy of an architectural work. According to the court, "[t]he House Report, in its explanation of the effective date provisions, also makes clear that an unconstructed work, embodied only in plans or drawings, can be infringed by a structure that embodies the copied design." Id. at 880 (citing H.R. REP. No. 101-735, at 23 n.53, reprinted in 1990 U.S.C.C.A.N. at 6954). The court's reference to a structure that embodies a copied design (rather than to a structure that embodies a copyrighted design) suggests the court's understanding that the act of copying must take place prior to the construction of the infringing building. That is, the building is not the copy, it is a tangible reflection of the design expressed in an infringing copy of the design, presumably a reproduction of the plans or drawings embodying the building design.

Under the law as it existed before 1990, a building was not a copy of an architectural plan; only a reproduction of a plan could be a copy of a plan. It would seem to follow logically that when the copyrighted subject matter is, as in this case,

4

"the design of a building as embodied in . . . architectural plans," a copy of the design would necessarily take the physical form of an architectural plan.  It may well be that when what is protected is "the design of a building as embodied in . . . a building," a copy of the design would take the form of a building.  But in this case, the protected design was never embodied in a building; it was only embodied in the second set of preliminary plans.

Assuming, however, that plaintiffs' architectural work could be copied either by reproducing the second preliminary plans or by constructing the building depicted therein, plaintiffs go one step further, arguing not that their architectural work was infringed by construction of a building, but that their work was infringed by the design and construction of a structural frame for a building, namely VTW's timberframe.

It is indisputable that the timberframe VTW designed and constructed was capable of supporting a building that reflects plaintiffs' architectural work, i.e., the "overall form" and the "arrangement and composition of spaces and elements" embodied in

5

the second preliminary plans. That alone, however, is insufficient to make the VTW timberframe a copy of plaintiffs' architectural work, because that frame is sufficiently accommodating that it could support any number of buildings that do not embody plaintiffs' architectural work.

Plaintiffs' architectural work includes a specific arrangement and composition of interior partitions (forming rooms) as well as door and window openings. While VTW's timberframe allows for rooms, doors, and windows to be placed as depicted in the second preliminary plans, nothing in VTW's timberframe, either as designed in the shop drawings or as built, requires those elements to be so placed. To be sure, the arrangement of the vertical posts in the VTW timberframe makes some door and window placements impossible, but that arrangement also leaves available many others that would not reflect plaintiffs' architectural work. For example, there is no reason why one could not have built out VTW's timber frame into a house with many fewer windows and twice as many rooms than the house depicted in the second preliminary plans. Such a structure, all would agree, would hardly reflect the design embodied in the

6

second preliminary plans. In short, VTW's timberframe does not reflect any particular "overall form" or "arrangement and composition of spaces and elements" because one of its attractive features is its flexibility - that frame can accommodate multiple building designs including, but certainly not limited to, the design embodied in the second preliminary plans.[1]

There is yet another difficulty with plaintiffs' theory. Plaintiffs assert, in footnote 2 of their motion for reconsideration, that their expert provided an opinion sufficient to create a question of fact regarding whether VTW's timberframe is substantially similar to plaintiffs' architectural work. That

---

[1] Plaintiffs appear to have recognized the ability of the VTW timberframe to accommodate multiple building designs because in October 2003, long after the VTW timberframe had been erected on Isbitski's property, plaintiffs executed a license agreement with Sugar River Bank allowing the Bank "to use the Timberpeg Plans to complete construction of the [Isbitski] House." (Def.'s Mot. Summ. J., Ex. 21.) That license agreement also provided that the Bank was "under no obligation to use the Timberpeg Plans to complete construction of the House – i.e. Bank may complete construction of the House in any manner, including a manner unrelated to the Timberpeg Plans." (Def.'s Mot. Summ. J., Ex. 21.) If the VTW timberframe were a copy of the plaintiff's architectural work, it is difficult to see how it would have been possible to complete construction of the house in a manner unrelated to the Timberpeg Plans which were the sole embodiment of the architectural work plaintiffs claim to be infringed by VTW's timberframe.

plaintiffs' expert can identify similarities between VTW's timberframe and plaintiffs' architectural work – which includes no frame design – does not, however, create a triable issue of fact on substantial similarity. Plaintiffs' reliance upon an expert to establish substantial similarity runs afoul of the First Circuit's "rule that expert testimony on the topic of 'substantial similarity' is not permissible . . . because the test is an 'ordinary observer test.'" Segrets, Inc. v. Gillman Knitware Co., 207 F.3d 56, 66 n.11 (1st Cir. 2000) (citing Concrete Mach. Co. v. Classic Lawn Ornaments, 843 F.2d 600, 608 (1st Cir. 1988)).

Here, the court has no difficulty concluding, as a matter of law, that neither VTW's shop drawings nor its timberframe is so similar to the architectural work embodied in plaintiffs' second preliminary plans "that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protected expression by taking material of substance and value." Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33 (1st Cir. 2001) (quoting Concrete Machine, 843 F.3d at 607). While an ordinary reasonable person might find the

8

house that was built on the VTW timberframe - its arrangement of windows, exits, stairs, and interior walls and spaces - to be substantially similar to plaintiff's architectural work, VTW did not design or build that house; it only designed and built the timberframe, which, as noted, hardly dictated the particular interior and exterior arrangement that followed.

## Question of Fact: Alleged Admission of Copying

Plaintiffs argue that the court overlooked evidence purportedly containing admissions to the effect that defendants copied plaintiffs' architectural plans. The letters from defendants' counsel that plaintiffs point to state, among other things: (1) "Timberpeg does not have a case against my client, my client did not copy their drawings or their frame design." (Pl.'s Obj. to Summ. J., Ex. H (Welch Ltr.) at 2); (2) "VTW never made any photocopies of your plans." (Pl.'s Obj. to Summ. J., Ex. I (Whittington Ltr.) at 2); (3) "VTW does not have a copy of the plans." (Whittington Ltr. at 2.). No reasonable fact-finder could conclude that the letters containing the foregoing statement constitute admissions of unlawful copying.

9

## Conclusion

To the extent the February 9, 2005, order fails to give due consideration to either the impact of the AWPA or to the distinction between the protection afforded an architectural plan under 17 U.S.C. § 102(a)(5) and that afforded under § 102(a)(8), that order is reconsidered as discussed herein. However, plaintiffs' further requests for relief are denied, and the judgment announced in the court's previous order stands, as modified by this order.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 6, 2005

cc:  W. E. Whittington, IV, Esq.
     Daniel E. Will, Esq.

10