# United States Court of Appeals
## For the First Circuit

No. 13-1774

MARK FRAPPIER,

Plaintiff, Appellant,

v.

COUNTRYWIDE HOME LOANS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Howard, Stahl and Lipez,
Circuit Judges.

Valeriano Diviacchi for Appellant.
Chad W. Higgins, with whom Brian M. LaMacchia, B. Aiden
Flanagan, and Goodwin Proctor LLP were on brief, for Appellee.

April 30, 2014

**STAHL, Circuit Judge**.  On May 11, 2009, Plaintiff Mark Frappier filed a five-count complaint in the Superior Court of Suffolk County, Massachusetts, alleging various state-law claims related to a mortgage refinancing.  Defendant Countrywide Home Loans, Inc. ("Countrywide") removed the case to federal court on diversity grounds.  The district court resolved certain claims as a matter of law in Countrywide's favor and held a bench trial on the remaining claims.  After the trial, the district court entered judgment in favor of Countrywide.  This appeal followed.  For the reasons stated below, we affirm all of the district court's rulings.

## I.  Background

The facts of this case are set forth in detail in the district court's opinion.  Frappier v. Countrywide Home Loans, Inc., No. 09-cv-11006, 2013 WL 1308602, at *4-15 (D. Mass. Mar. 31, 2013).  We briefly reiterate them here only as necessary to provide context for the issues on appeal.

Frappier resides in Southwick, Massachusetts.  In June 1999, he and his wife purchased his mother's house ("the Property") with a mortgage from Countrywide.  In the years that followed, Frappier took out multiple mortgages to finance home improvements, initially with his wife and later in his own name after the couple divorced.  Frappier remarried and took out an additional mortgage with his second wife.  When that marriage ended in March 2006, the

divorce agreement required Frappier to either sell the Property by July 21, 2006, or refinance the mortgage in his own name by August 20, 2006. Frappier was unable to sell the Property, and he failed to refinance by the August 20 deadline.

To cure his breach of the divorce agreement, Frappier applied for a loan from Countrywide on September 19, 2006. The loan for which he applied was a "stated income loan," otherwise known as the "Fast and Easy" loan program. Under the terms of this loan program, applicants would be approved if one had a credit score at or above 680, verified employment, and a loan-to-property value of less than eighty percent. Documentation of assets and income was not required, but applicants had to personally verify under criminal penalty that the information they provided was accurate. The loan officer testified that Frappier stated his monthly income as $5563, but Frappier claims he reported a lower income figure.

Countrywide, following its normal underwriting process, determined that Frappier had met the requirements for the Fast and Easy loan program. At the closing, Frappier signed the application, which listed his income as $5563 a month, and swore under criminal penalty that the information in the application was accurate. He also executed a Borrower's Certification, which certified that he had provided accurate information regarding his

-3-

income and assets.  Countrywide issued the loan in October 2006 ("October 2006 Loan").

On November 17, 2006, three weeks after the closing of the  October 2006 Loan, Frappier applied to Countrywide for a home equity loan in the amount of $38,500.[1]  Countrywide approved this loan as well, and it closed on December 13, 2006  ("December 2006 Loan").

Thereafter, Frappier made the scheduled payments on the October 2006 Loan for fifteen months.[2]  In 2008, he changed jobs, but his new employer let him go.  Around the same time, Frappier faced unusually high expenses for home heating bills and repairs to his truck.  He also suffered from an illness that hospitalized him for a day and kept him out of work for some time.  That winter, Frappier attempted again to sell the Property, but he was not successful.  Because he was unable to make payments on his loan, Countrywide foreclosed on the Property.

---

[1] The district court did not directly address the facts related to this second loan in the opinion it issued after the bench trial.  They are relevant, however, to Frappier's appeal from the district court's denial of his motion to amend the complaint. We take these facts from an earlier First Circuit opinion in this case, Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 54-55 (1st Cir. 2011).

[2] We do not know from the facts before us the extent of Frappier's payments on the smaller December 2006 Loan.

-4-

## II. Procedural History

Frappier filed a complaint in Suffolk Superior Court on May 11, 2009, alleging claims of unjust enrichment (Count I), recission/equitable relief (Count II), breach of the implied covenant of good faith and fair dealing (Count III), unfair and deceptive acts in violation of Massachusetts General Laws chapter 93A (Count IV), and negligence (Count V). All of the claims arise from Frappier's contention that Countrywide used improper tactics to draw him into loan agreements that the mortgagor knew he would be unable to satisfy.

After removing the case to federal court, Countrywide moved for summary judgment on all counts. Frappier opposed the motion and filed a cross-motion for summary judgment. Frappier argued at this stage that the court should consider both the October 2006 Loan and the December 2006 Loan together as the basis for his claims, although the complaint made no mention of the December 2006 Loan. The district court granted Countrywide's motion on all counts.

On appeal, the First Circuit reversed in part. With respect to the December 2006 Loan, the court held that:

> Countrywide argues . . . that the attack on the December loan is an independent claim for a different transaction essentially forfeited because Frappier did not mention the December second home mortgage or any facts pertaining to it in his complaint. This is correct and a new transaction cannot be asserted for the first time at summary judgment. However, the district court might on remand allow an amendment to the complaint.

-5-

Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 58 (1st Cir. 2011). Despite allowing for the possibility of an amendment to the complaint, the First Circuit nevertheless held that certain claims failed as a matter of law, affirming the dismissal of the negligence and rescission/equitable relief claims in their entirety and the covenant claim as it related to the December 2006 Loan. It vacated the dismissal of the covenant claim as it related to the October 2006 Loan, however, and it vacated the dismissal of the unjust enrichment and 93A claims in their entirety.

On remand, Frappier filed a motion to amend the complaint, seeking to include allegations about the December 2006 Loan. The court denied the motion on December 12, 2011. On March 16, 2012, Countrywide filed a motion for judgment on the pleadings with respect to the breach of good faith and fair dealing claim (Count III) and to strike Frappier's jury demand. The district court granted the motion in both respects. On April 23 and 24, 2012, the court held a bench trial on the remaining claims: unjust enrichment (Count I) and violations of chapter 93A (Count IV). It entered judgment in favor of Countrywide on both counts. After the trial, Frappier filed a motion under Federal Rule of Civil Procedure 52 for amended or additional findings of fact, or, in the alternative, for a new trial under Rule 59. The court denied that motion and Frappier appealed.

## III.  Analysis

On appeal, Frappier challenges the denial of his motion to amend, his request for a jury trial, and his post-trial motion for amended factual findings or a new trial.  He also challenges the district court's judgment on the pleadings resolving Count III in Countrywide's favor.  After careful consideration, we find no grounds for reversing any of the district court's decisions.

**A.        Denial of Motion to Amend**

On October 27, 2011, Frappier moved to amend his complaint to include allegations related to the December 2006 Loan. The district court denied the motion on the grounds of undue delay and undue prejudice.  We review a denial of a motion to amend for abuse of discretion.  <u>Watson</u> v. <u>Deaconess Waltham Hosp.</u>, 298 F.3d 102, 109 (1st Cir. 2002).

The district court did not err, much less abuse its discretion, in this instance.  As the district court noted, the proposed amendment came over two years after the initial complaint was filed and a year after the district court ruled on the summary judgment motions.  Nothing prevented Frappier from pursuing this amendment earlier.  As the borrower, Frappier certainly had sufficient information about the December 2006 Loan to allege claims related to that transaction at the outset of litigation, and he very likely could have amended his complaint, had he wished to do so, prior to summary judgment.

The district court correctly decided that the timing of the amendment constituted undue delay. "[P]rotracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). The district court was also correct that the amendment would unfairly prejudice Countrywide, given the likelihood that the amendment would require additional discovery. See id. ("Particularly disfavored are motions to amend whose timing prejudices the opposing party by requiring a re-opening of discovery . . . .") (internal quotation mark omitted). Thus, we affirm the denial of the motion to amend.[3]

**B.        Judgment on the Pleadings**

"The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)." Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). We "review de novo a district court's decision to allow a motion to dismiss,

_____

[3] Frappier also argues that the amendment is unnecessary, because facts related to the December 2006 Loan came out during discovery. His argument on this point appears to confuse the pleading standard under Federal Rule of Civil Procedure 8 with the rules governing the admissibility of evidence at trial. In any case, this court has already held the December 2006 Loan was a separate transaction that could not be asserted as a basis for a claim in this case unless the district court exercised its discretion to allow an amendment. Frappier, 645 F.3d at 58.

taking as true the well-pleaded facts in the complaint and drawing all reasonable inferences in favor of the plaintiff."  Id.

Countrywide moved for judgment on the pleadings on Count III, arguing that allegations of bad-faith conduct occurring prior to the formation of a contract do not state a claim for breach of the implied covenant of good faith and fair dealing.  See AccuSoft Corp. v. Palo, 237 F.3d 31, 45 (1st Cir. 2001) ("[T]he prohibition contained in the covenant applies only to conduct during the performance of the contract, not to conduct occurring prior to the contract's existence, such as conduct affecting contract negotiations.").  As the district court noted, Frappier's theory of liability in this case rests not on allegations of conduct that occurred after the closing of the October 2006 Loan, but rather on alleged misconduct during the application process.

In his opposition to the motion and again on appeal, Frappier argues that he and Countrywide "had several interactions prior to [the date of the closing] to which the implied covenant of good faith and fair dealing applies."[4]  The district court rejected that argument, because allegations regarding pre-closing agreements "were not included in the operative complaint," and Frappier had made no attempt "to amend his complaint to include any such allegations in the wake of factual discoveries in the life of this

---

[4] Among other things, Frappier points to a "Lock-In Agreement" dated September 19, 2006, and a verbal "pre-approval agreement" sometime in early October.

-9-

case." It further held that Frappier had waived this argument because he did not "identify or develop such a theory during discovery, initial disclosures, or any pretrial filings." Finally, the district court observed that the substance of any alleged pre-closing agreements would not have any bearing on whether Countrywide breached the covenant implied in the October 2006 loan. We see no error in the district court's reasoning on this issue.

Frappier raised one additional argument that the district court did not squarely address, which we find equally groundless. He claims that the October 2006 Loan was a type of installment contract "that can be breached on a monthly basis every time a loan payment is made." Therefore, Frappier concludes, Countrywide breached the covenant each month by accepting payments that it knew Frappier could not afford. It is well-established, however, that "a party's acting according to the express terms of a contract cannot be considered a breach of the duties of good faith and fair dealing." Big Yank Corp. v. Liberty Mut. Fire Ins. Co., 125 F.3d 308, 313 (6th Cir. 1997); Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank, 934 F.2d 976, 983 (8th Cir. 1991); Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1357 (7th Cir. 1990) ("Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.'"); 23 R. Lord, Williston on Contracts § 63:22 (4th ed.

2013).  Accordingly, Countrywide's acceptance of payments under the agreed-upon terms of the mortgage does not give rise to a claim of bad faith.

**C.      Right to a Jury Trial**

Once it entered judgment on the pleadings for Count III, the district court determined that Frappier did not have a right to a jury trial under the Seventh Amendment on the remaining claims for unjust enrichment and violation of chapter 93A.  Although it is undisputed that the unjust enrichment count does not require a jury trial, Frappier reiterates on appeal his argument that he was entitled to a jury on his chapter 93A claim.  The district court's decision denying the jury request was based on Wallace Motor Sales, Inc. v. American Motors Sales Corp., 780 F.2d 1049 (1st Cir. 1985), and more recent district court opinions that have followed Wallace.  While the district court's reliance on Wallace is understandable, given that it is this court's most extensive discussion of the issue, there are two reasons why that case is not dispositive here.

First, the parties in Wallace stipulated that there was no right to a jury under chapter 93A, see 780 F.2d at 1064, so the issue was not contested in that case.[5]  Second, the parties based

---

[5]  The court in Wallace addressed whether the court could make factual findings related to chapter 93A claims that were contrary to the jury's earlier findings related to another claim in the case.  780 F.2d at 1063–67.  The court's analysis proceeded from the assumption, based on the party's stipulation, that there was no right to a jury trial for the 93A claims.

their stipulation on <u>Nei</u> v. <u>Burley</u>, 446 N.E.2d 674 (Mass. 1983), in which the Supreme Judicial Court of Massachusetts determined that there was no right to a jury for chapter 93A claims under the Massachusetts Constitution. It is true that in <u>Wallace</u> we stated that "the reasoning employed by the Massachusetts Supreme Judicial Court in <u>Nei</u> is determinative of the seventh amendment issue." 780 F.2d at 1064. But the settled rule is that a litigant's right to a jury under the Seventh Amendment for state-law claims in federal court is a matter of federal, not state, law. <u>See</u> <u>Ed Peters Jewelry Co.</u> v. <u>C & J Jewelry Co.</u>, 215 F.3d 182, 186 (1st Cir. 2000); <u>Gallagher</u> v. <u>Wilton Enters.</u>, 962 F.2d 120, 122 (1st Cir. 1992) (per curiam). Therefore, the analysis in <u>Nei</u> does not answer the question in this case.

Subsequent to the decision in <u>Wallace</u>, the Supreme Court reiterated the two-part test for determining the right to a jury trial under the Seventh Amendment: courts (1) "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) "examine the remedy sought and determine whether it is legal or equitable in nature." <u>Chauffeurs, Teamsters & Helpers, Local No. 391</u> v. <u>Terry</u>, 494 U.S. 558, 565 (1990) (internal quotation marks omitted). The Court has stressed that "[t]he second inquiry is the more important." <u>Id.</u> The court in <u>Wallace</u> did not have occasion to apply this analysis, perhaps because the parties in that case

-12-

did not dispute the issue.  But we have held that chapter 93A allows a litigant to seek both legal and equitable relief.  Gerli v. G.K. Hall & Co., 851 F.2d 452, 454 (1st Cir. 1988).  In light of the importance of the nature of the remedy under federal law, a litigant seeking legal relief in federal court under chapter 93A may be entitled to a jury.  Regardless of any contrary language in Wallace, the question remains an open one in this circuit.

This case does not require us to answer that question.  Even if the district court deprived Frappier of his Seventh Amendment right, the denial of a jury trial is subject to a harmless error analysis.  Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 64 (1st Cir. 2000); In re N-500L Cases, 691 F.2d 15, 25 (1st Cir. 1982).  The error is harmless "if the evidence meets the standard for a directed verdict."  Segrets, 207 F.3d at 64.  Pursuant to that standard, we review the district court's conclusions of law de novo and view the evidence in the light most favorable to Frappier.  Id.  We do not "consider the credibility of witnesses, resolve the conflicts in testimony, or evaluate the weight of the evidence."  Id. at 65.  A directed verdict is appropriate if "the evidence does not permit a reasonable jury to find in favor" of Frappier.  Id. (internal quotation mark omitted).

We have no trouble concluding that a directed verdict would have been appropriate here.  This is not a close case.  Of the numerous deficiencies in Frappier's chapter 93A claim, we need

-13-

only focus on one that is dispositive — Frappier failed to prove causation.

The undisputed evidence shows that Frappier made timely payments on the October 2006 loan for approximately fifteen months. Then in the winter of 2008, according to Frappier's own testimony, he was plagued with a series of serious financial difficulties. He suffered an illness that required hospitalization and forced him to miss work; he faced unexpected expenses for the repair of his vehicle and unusually high home heating bills; and he switched to a new job with the prospect of better money, but the new job did not last. Frappier acknowledged that these circumstances were not predictable. As these difficulties piled up, Frappier became delinquent on the October 2006 Loan.

The district court held that "the reasonable conclusion from the evidence was that Frappier's [] hardships caused his default, not the October 2006 Loan." 2013 WL 1308602, at *19. We agree. Frappier was able to pay the loan until a series of unfortunate circumstances overwhelmed his financial situation. There is no basis in the evidence for concluding that it was Countrywide, rather than Frappier's unexpected financial difficulties, that caused him to default. "In the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery." Mass. Farm Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc., 532 N.E.2d 660, 665 (Mass. 1989).

-14-

Therefore, the evidence in this case meets the standard for a directed verdict. Thus, even if the district court erred in denying Frappier a trial by jury, the error was harmless.

**D.      Motion for Amended Factual Finding or a New Trial**

After trial, Frappier moved for amended or additional findings of fact under Federal Rule of Civil Procedure 52(b) or for a new trial under Rule 59. Trial courts have considerable discretion in deciding whether to grant Rule 52(b) motions. Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 125 (1st Cir. 1990). Unless the decision involves a question of law, our review is for abuse of discretion. Id. Similarly, "[a]ppellate review of orders refusing new trials [under Rule 59] is tightly circumscribed." Colasanto v. Life Ins. Co. of N. Am., 100 F.3d 203, 212 (1st Cir. 1996). "[W]e will not intervene unless we ascertain that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." Id. (internal quotation marks omitted).

Frappier makes two arguments related to his post-trial motion. First, he asserts that the district court's judgment was based on an "incomplete statement of [his] claims." According to Frappier, the district court was not sufficiently attentive to four specific allegations: that Countrywide (1) "failed to verify Frappier's employment"; (2) "violated M.G.L. c. 93A and other Massachusetts and federal lending laws"; (3) "failed to make

several initial and final disclosures — which are required by state and federal truth-in-lending laws — to Frappier before and after closing"; and (4) "imposed substantial harm on Frappier."  In Frappier's view, the "failure to address these claims denied [him] his basic right to have his complaint construed in such a way as to do justice," necessitating either additional findings of fact or a new trial.

Even a cursory review of the district court's opinion reveals this argument to be baseless.  See Frappier, 2013 WL 1308602, at *10, *19 (finding that Countrywide verified Frappier's employment); id. at *15-19 (finding no violation of chapter 93A); id. at *13, *19 (finding that Frappier received all the required disclosures); id. at *19 (finding that Countrywide's conduct was not the cause of any harm to Frappier).  Frappier's argument suggests that he would have preferred a fuller explanation of these issues, but it is not a legal error to draft a concise opinion. The district court addressed Frappier's claims and supported its conclusions more than adequately.

Second, Frappier claims that the district court failed to address the "substance of [his] case," which "concerns Countrywide's responsibility . . . to engage in fair, non-predatory lending practices in its dealings with Frappier."  He argues that the district court missed the mark by focusing its analysis of the chapter 93A claim "almost exclusively [on] the origin of the false

income figure attributed to Frappier, while ignoring the larger context through which Countrywide processed and underwrote its loans to Frappier."  He also points to a number of additional Massachusetts statutes and regulations that Countrywide supposedly violated.

This argument does not merit extensive discussion.  We have carefully reviewed the district court's disposition of the chapter 93A claim, and we find that it is thorough, well-reasoned, and correct.  The other statutes and regulations cited by Frappier either do not apply to this case or do not affect its outcome.  In sum, Frappier has not identified any basis for reversing the district court's denial of his motion for new factual findings or a new trial.

### III.  Conclusion

For the foregoing reasons, we **AFFIRM** the district court's rulings.