# United States Court of Appeals
## For the First Circuit

No. 06-2527

ENID MARRERO-GUTIERREZ; ALEJANDRO BOU SANTIAGO

Plaintiffs, Appellants,

v.

ESPERANZA MOLINA; IVAN VELEZ; ILEANA ECHEGOYEN; GABRIEL ALONSO;
NILSA ENID NEGRON; RAMONITA GARCIA; WANDA ROMAN; LUIS COSS; MYRNA
CRESPO-SAAVEDRA; HOUSING DEPARTMENT OF THE COMMONWEALTH OF PUERTO
RICO

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Justo Arenas, U.S. Magistrate Judge]

Before

Lynch, Circuit Judge,
Howard, Circuit Judge,
and Young,[*] District Judge.

Lixandra Osorio Felix and Liz Marie Cruz-Jimenez, on brief
for appellants.
Salvador J. Antonetti-Stutts, Solicitor General, Susana I.
Penagaricano-Brown, Assistant Solicitor General, Mariana Negron-
Vargas, Deputy Solicitor General, and Maite D. Oronoz-Rodriguez,
Deputy Solicitor General, on brief for apellees.

June 20, 2007

[*] Of the District of Massachusetts, sitting by designation.

**YOUNG, District Judge**.   Enid Marrero-Gutierrez ("Marrero") and Alejandro Bou Santiago ("Bou") (collectively "the Plaintiffs") sued Esperanza Molina ("Molina"), Ivan Velez ("Velez"), Luis Coss ("Coss") a/k/a Tito, Gabriel Alonso ("Alonso"), Ileana Echegoyen, Nilsa Enid Negron, Ramonita Garcia, and Wanda Roman in their personal capacities; Myrna Crespo-Saavedra in her official capacity; and the Housing Department of the Commonwealth of Puerto Rico ("Housing Department") (collectively "the Defendants") for political discrimination and violations of the Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.  The Plaintiffs also asserted various state-law claims.  Acting on a motion for judgment on the pleadings, the district court granted judgment to the Defendants on all claims.  The Plaintiffs now appeal.  After careful consideration, we affirm.

## I. Factual and Procedural History

The Plaintiffs are former employees of the Housing Department and active members of the New Progressive Party ("NPP") – a political party that campaigns for Puerto Rican statehood.  In 2000, Puerto Rico held its general elections, and the Popular Democratic Party ("PDP") won control of the government.  The PDP is a political adversary of the NPP.

Bou worked in the Housing Department for ten years.  In May 2000, he received a promotion to the position of Administrative

Director II and was appointed as the Director of the Office of Security and Emergency Management of the Housing Department. As a result of PDP's winning the elections that year, Coss - a member of the PDP - was appointed Special Assistant to the Secretary of the Housing Department. Bou alleges that Coss gave instructions to the Human Resources personnel of the Housing Department to find a way to replace him with a PDP adherent. Specifically, Bou alleges that Coss made this request to Angel Semidey ("Semidey") who, despite being a PDP adherent, refused to help Coss and subsequently resigned. On March 7, 2001, Bou was demoted. On July 27, 2002, Bou encountered Semidey at a celebration and, for the first time, learned that his demotion resulted from his affiliation with NPP.

Marrero held a career position as Director of the Section 8 Program starting in 1994. Marrero alleges that her job performance garnered only praise from her supervisors. Marrero managed to receive such positive performance feedback despite serving under different party administrations during her career at the Housing Department.

Marrero alleges that after Molina retired in June 2002, the Housing Department was reorganized without following federal guidelines. As part of the reorganization, Alonso was brought in to supervise the Section 8 Program. The reorganization amounted to a constructive demotion of Marrero by reducing her responsibilities and subjecting her to an abusive work environment. Specifically,

her new responsibilities failed to include functions that she was entitled to perform under the Housing Department's prior reclassification program. Marrero also alleges that her subordinates often circumvented her, that her supervisors treated her in a discourteous manner by harassing and intimidating her, and that Molina openly disparaged the NPP in front of Marrero and her personnel. Finally, Marrero suffered several humiliating events arising out of her health status. Marrero was surgically treated for cancer in her reproductive system. The Defendants allegedly mocked her as a result of this condition, claiming that she was not really sick and simply attempting to avoid returning to work by faking her illness.

On or about May 3, 2002, while still on medical leave, Marrero received a letter dated April 18, 2002, stating the intention to remove her from office. This letter, and a subsequent one, accused her of failing to perform job duties and of committing illegal acts. These accusations mirrored ones levied against Velez - a member of the PDP - who directly supervised Marrero during this time. The Housing Department also notified Velez that it intended to terminate him. Velez was initially demoted and later terminated. In both letters, Marrero was summoned to an informal hearing, which she alleges was a sham designed to tarnish her reputation. Despite her characterization of the hearing, Marrero was able to proffer evidence rebutting the accusations against her.

Marrero was allowed to continue working at the Housing Department pending the final disposition. The hearing officer submitted a negative report. On March 10, 2002, the Housing Department notified Marrero of her separation from employment and salary, which constituted the last alleged act of discrimination by the Defendants.

This action commenced in the district court on March 10, 2003. The Housing Department successfully moved to dismiss, on Eleventh Amendment grounds, the claims against it for monetary relief. Marrero does not appeal this ruling. Thereafter, upon motions duly briefed by both sides, the district court granted the Defendants judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The appeal of this order is before this Court.

## II. Analysis

The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6). Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005); Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998). Courts of appeals review de novo a district court's decision to allow a motion to dismiss, taking as true the well-pleaded facts in the complaint and drawing all reasonable inferences in favor of the plaintiff. Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 69 (1st Cir. 2005).

## A.    Statute of Limitations

Title 42 of the United States Code, section 1983 creates a private right of action for violations of federally protected rights.  Because it has no internal statute of limitations, section 1983 claims "borrow[] the appropriate state law governing limitations unless contrary to federal law." Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003).

The parties do not dispute that the relevant statute of limitations for civil rights claims in Puerto Rico takes a one-year limitation period from P.R. Laws Ann. Tit. 31, § 5298(2). Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005); Benitez-Pons v. Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998).

The parties do dispute, however, the date from which the one-year statute of limitation ought accrue.  Bou argues that the injury occurred in July 2002, when Semidey revealed the wrongful reasons for his demotion.  The Defendants counter that the proper accrual date is March 7, 2001, the date of the actual demotion.

Federal law determines the date on which the statute of limitations begins running. Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997).  The first step in such an inquiry is to determine the actual injury on which the plaintiff rests the cause of action.  Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994).  Here, there is no dispute that the actual injury of which

Bou complains is his demotion. Bou's argument, and the dispositive point on this issue faced by this Court, is thus properly framed as whether the date of that injury ought be tolled until he learned of the discriminatory animus that made his demotion wrongful.

As a general principle, section 1983 claims accrue "when the plaintiff knows, or has reason to know, of the injury on which the action is based." Id.; Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 96-97 (1st Cir. 2004); Rodriguez Narvaez v. Nazario, 895 F.2d 38, 41 n.5 (1st Cir. 1990). A claimant is deemed to "know" or "learn" of a discriminatory act at the time of the act itself and not at the point that the harmful consequences are felt. See Chardon v. Fernandez, 454 U.S. 6, 8 (1981); Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980).

In the employment discrimination context, this circuit has rejected the contention that claims do not accrue until the plaintiff knows of both the injury and the discriminatory animus. Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 749-50 (1st Cir. 1994); cf. Vistamar, Inc., 430 F.3d at 66 (holding that the statute of limitations period for a section 1983 claim seeking to redress an unlawful taking of property began to accrue on the date of the wrongful appropriation). In Morris v. Government Development Bank of Puerto Rico, we dismissed the identical theory proffered by Bou when we rejected the appellant's contention that "his cause of action existed in what amounts to a state of suspended animation

-7-

until he became aware of the racial and political motives behind the adverse employment decision."  27 F.3d at 749-750.

Following this clear precedent, the statute of limitations period for Bou's claim began to accrue at the first discrete act of discrimination. See id.; cf. Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. __, 2007 WL 1528298, at *2 (May 29, 2007) (holding that the limitations period for a Title VII claim for pay discrimination begins with the first discrete act).  There is simply no support for Bou's argument that this date ought be suspended until he learned the discriminatory motives behind the discrete act.  As a result, the limitations period for Bou's claim began on the date of his demotion.  Since Bou did not file this action until March 10, 2003, his claims are, as the district court correctly ruled, time-barred.

### B.  Marrero's Threshold Arguments

Marrero advances three threshold, procedural challenges to the dismissal of her section 1983 claims.  She argues that the district court erred in allowing the Defendants' motion for a judgment on the pleadings because the Defendants had waived the grounds upon which the district judge relied by failing to consolidate their defenses and raise them in the first motion to dismiss.  Second, Marrero contends that the district judge improperly converted the Defendants' motion for judgment on the pleadings into a motion for summary judgment.  Finally, Marrero

raises the argument that the district court ought not have dismissed the ancillary state law claims after finding no cognizable section 1983 claim. These threshold issues are easily dispensed with before addressing the arguments on the merits.

### 1. Failure to Consolidate Defenses

The district court dismissed the Plaintiffs' claims by allowing a narrow motion to dismiss and then subsequently allowing a broader motion for judgment on the pleadings. Marrero attacks the district court's allowance of the second motion by parroting the general rule for consolidation of defenses found in Federal Rule of Civil Procedure 12(g). According to Marrero, the Defendants waived the grounds upon which the district court relied in the second motion by failing to raise them when the Housing Department moved to dismiss on Eleventh Amendment grounds.

Federal Rule of Civil Procedure 12(g) provides that:

> A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, **except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.**

Fed. R. Civ. P. 12(g) (emphasis added).

Marrero ignores the rule's express exception that cross-references subdivision (h)(2) and permits a "defense of failure to

-9-

state a claim upon which relief can be granted" to be raised "by motion for judgment on the pleadings." Fed. R. Civ. P. 12(h)(2); see Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 387-88 (1st Cir. 2001).

Here, the district court entertained and allowed a motion for judgment on the pleadings that raised a defense of failure to state a claim. The district court's action thus squarely meets the exception to the general rule expressed in Rule 12(g) and undermines Marrero's argument.

2. Improper Conversion

Marrero also argues that the district court improperly converted the motion for judgment on the pleadings into a motion for summary judgment. This argument marries with Marrero's contention that factual issues existed on the merits of her section 1983 claim. Marrero, consumed by her belief that such factual issues existed, concludes that the district judge must have converted the motion for judgment on the pleadings into a motion for summary judgment in order to dismiss the case. There is, however, no support that such a conversion occurred.

The record shows that the district court properly considered the matter as a motion for judgment on the pleadings. The Defendants did not attach any documents or exhibits outside their pleadings, and the district court never allowed the parties to supplement the record. See Collier, 158 F.3d at 603 (holding

-10-

that such a conversion is proper in order to consider materials outside the pleadings).

Of course, the implication of this holding is that we will review, as we do below, Marrero's arguments as to why factual issues remained as to her section 1983 claims under the standard for a motion for judgment on the pleadings, which requires the plaintiff to meet only a deferential, notice-pleading requirement to survive dismissal. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006).

3. Supplemental Jurisdiction

Finally, Marrero raises, though weakly pursues, an argument that the district court failed to exercise supplemental jurisdiction over her ancillary state law claims. Marrero concedes in her brief that the jurisdictional power of the district court rested solely on federal question jurisdiction. As a result, the district court would have needed to exercise supplemental jurisdiction in order to adjudicate claims that arose under the laws of the Commonwealth of Puerto Rico. See 28 U.S.C. § 1367(a).

A district court retains the discretion, however, to decline to exercise supplemental jurisdiction where the district court has dismissed all claims over which it had original jurisdiction. Id. § 1367(c)(3); see Rodriquez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the

-11-

early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

Here, the district court, after dismissing the section 1983 claim, exercised the discretion to dismiss the supplemental state-law claims.  We will not disturb this proper exercise of discretion.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1987).

**C.  Marrero's Merits Arguments**

After dispensing with the threshold, procedural arguments, we must carefully review the district court's dismissal on a motion for judgment on the pleadings of Marrero's section 1983 claim.  Such a review must be conducted by considering the adequacy of Marrero's complaint in light of the Supreme Court's admonition that there can be no "heightened pleading standard" or a "more demanding rule for pleading a complaint under § 1983 than for pleading other kinds of claims for relief."  Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 167-68 (1993).  We consider each of Marrero's theories in turn.

1. Procedural Due Process Claim

In order to establish a procedural due process claim under section 1983, a plaintiff "must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that

property interest without constitutionally adequate process." <u>PFZ</u> <u>Props., Inc.</u> v. <u>Rodriquez</u>, 928 F.2d 28, 30 (1st Cir. 1991).

To establish a constitutionally protected property interest in employment, a plaintiff must demonstrate that she has a legally-recognized expectation that she will retain her position. <u>Santana</u> v. <u>Calderon</u>, 342 F.3d 18, 24 (1st Cir. 2003). A legitimate expectation of continued employment may derive from a statute, a contract, or an officially sanctioned rule of the workplace. <u>Id.</u>; <u>Perry</u> v. <u>Sindermann</u>, 408 U.S. 593, 601-02 (1972). Here, it is undisputed that under the laws of Puerto Rico, career or tenured employees have property rights in their continued employment. <u>Gonzalez-De-Blasini</u> v. <u>Family Dep't</u>, 377 F.3d 81, 86 (1st Cir. 2004); <u>Figueroa-Serrano</u> v. <u>Ramos-Alverio</u>, 221 F.3d 1, 7 (1st Cir. 2000); <u>Kauffman</u> v. <u>P.R. Tel. Co.</u>, 841 F.2d 1169, 1173 (1st Cir. 1988).

This inquiry, therefore, narrows to whether Marrero received constitutionally adequate process. <u>See</u> <u>PFZ Props., Inc.</u>, 928 F.2d at 30. Such a standard naturally requires us to consider what process was provided to Marrero and whether it was constitutionally adequate. <u>Zinermon</u> v. <u>Burch</u>, 494 U.S. 113, 126 (1990). In this case, we must decide whether the pre-termination hearing provided to Marrero satisfies this standard.

Due process requires only that the pre-termination hearing fulfill the purpose of "an initial check against mistaken

decisions - essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Cepero-Rivera v. Fagundo, 414 F.3d 124, 135 (1st Cir. 2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46 (1985)). This initial check requires the employee to receive notice of the charges, an explanation of the evidence that supports those charges, and the ability to refute that evidence. See id. at 134. Any standard that would require more process than this would unduly impede the government in removing poorly performing employees. See id.

Marrero concedes in her amended complaint that on May 3, 2002, she received a letter informing her of the Housing Department's intention to remove her from office. This letter, along with a second letter, required her to appear at an informal meeting to discuss the removal proceedings. She attended the meeting and was given a full opportunity to respond to each of the allegations. Even drawing all inferences in Marrero's favor, the process provided her in this pre-termination hearing comported with due process guarantees by providing her notice and an opportunity to be heard. As a result, the pre-termination hearing provided constitutionally adequate process without necessitating a post-termination hearing. See Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40, 43-44 (1st Cir. 1988) (holding that due process requires no irreducible combination of pre- and post-termination hearings).

2. <u>Equal Protection Claim</u>

Under the Equal Protection Clause, persons similarly situated must be accorded similar governmental treatment. <u>See</u> <u>City of Cleburne</u> v. <u>Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985); <u>Barrington Cove Ltd. P'ship</u> v. <u>R.I. Hous. & Mtg. Fin. Corp.</u>, 246 F.3d 1, 7 (1st Cir. 2001). In order to establish this claim, Marrero needs to allege facts indicating that, "compared with others similarly situated, [she] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." <u>Rubinovitz</u> v. <u>Rogato</u>, 60 F.3d 906, 910 (1st Cir. 1995).

The formula for determining whether individuals or entities are "similarly situated" for equal protection purposes is not always susceptible to precise demarcation. <u>See</u> <u>Coyne</u> v. <u>City of Somerville</u>, 972 F.2d 440, 444-45 (1st Cir. 1992). Instead, the test is whether an objective person would see two people similarly situated based upon the incident and context in question. <u>See</u> <u>Rodriquez-Cuervos</u> v. <u>Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 21 (1st Cir. 1999).

Here, Marrero fails even to implicate this test by failing to make any allegation that persons similarly situated were treated more favorably. In fact, the complaint includes allegations to the contrary by admitting that Velez, despite his

-15-

PDP membership, was accused of similar charges, accorded similar process, and eventually received a similar reprimand. Accordingly, Marrero's equal protection claim was correctly dismissed.

### 3. Political Discrimination

Finally, we address Marrero's claim of political discrimination. The First Amendment protects non-policymaking public employees from adverse employment actions based on their political opinions. See Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Padilla-Garcia v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000). To establish a prima facie case, a plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action. See Padilla-García, 212 F.3d at 74; Angulo-Alvarez v. Aponte de la Torre, 170 F.3d 246, 249 (1st Cir. 1999). "While plaintiffs are not held to higher pleading standards in § 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." Torres-Viera v. Laboy-Alvarado, 311 F.3d 105, 108 (1st Cir. 2002) (citing Leatherman, 507 U.S. at 167-68); see also, Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007)(rephrasing the standards under Rule 12 (b)(6)).

Here, Marrero's allegations are limited to stating that she was badly treated at work and that her political party was mocked. Thus, Marrero has failed to set forth any sort of causal connection between her demotion and the political animus that she

alleges prompted it. Merely juxtaposing that she is an active member of the NPP and that the defendants are affiliated with the PDP is insufficient, standing alone, to create a causal link. See Bell Atlantic Corp., 127 S.Ct. at 1966; Padilla-García, 212 F.3d at 74. True, such a connection is one among a myriad of possible inferences. Yet even drawing all reasonable inferences in Marrero's favor, it would be speculative to draw the forbidden inference from the range of possibilities. See Bell Atlantic Corp., 127 S.Ct. at 1966 (stating that a naked assertion of conspiracy gets the complaint close to stating a claim, but "without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief"). Accordingly, the district court correctly concluded that her complaint failed to state a cause of action upon which relief could be granted.

## III. CONCLUSION

Each of the Plaintiff's arguments fails to state a claim upon which relief could be granted. Therefore, the district court's ruling ought be, and hereby is, affirmed.

-17-