**Edgardo Cruz VELAZQUEZ, et al., Plaintiffs**

v.

**Angel D. Rodriguez QUIÑONES, et al., Defendants.**

**Civil No. 03–1255 (FAB).**

United States District Court, D. Puerto Rico.

Aug. 2, 2007.

Fredeswin Perez–Caballero, Jesus M. Hernandez–Sanchez, Hernandez Sanchez Law Firm, San Juan, PR, for Plaintiffs.

Felix M. Roman–Carrasquillo, Idza Diaz–Rivera, P.R. Department of Justice–Federal Litigation, Javier I. Arbona, Yassmin Gonzalez–Velez, Quinones, Sanchez & Guzman, PSC, Jose Enrico Valenzuela–Alvarado, Department of Justice, Director of Legal Affairs, Elfrick Mendez–Morales, Mendez & Mendez, San Juan, PR, Gary H. Montilla–Brogan, Aldarondo & Lopez Bras, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On March 10, 2003, plaintiffs Edgardo Cruz–Velazquez ("Cruz–Velazquez") and his wife Judith Velazquez–Rivera (collectively "plaintiffs"), filed suit against several employees as well as the current and some former administrators of the Administracion de Reglamentos y Permisos (Regulations and Permits Administration) ("ARPE")(collectively "defendants"), alleging civil rights and due process violations pursuant to 42 U.S.C. §§ 1983 & 1985, as well as supplemental state law claims under Puerto Rico's general tort statute, P.R. Laws Ann. tit. 31 § 5141 (Docket No. 1). On March 30, 2007, defendants moved for summary judgment on plaintiffs' claims (Docket Nos. 93, 94). On May 2, 2007, plaintiffs opposed the motion (Docket Nos. 98, 102). For the reasons discussed below, the Court **GRANTS** defendants' motion for summary judgment.

## FACTUAL BACKGROUND

Cruz–Velazquez is a supporter of the New Progressive Party ("NPP"). On April 17, 1997, Cruz–Velazquez was appointed and sworn to the position of Director of Human Resources in ARPE. The position had previously been classified as a career position. On April 8, 1997, before Cruz–Velazquez was appointed, the position was reclassified as a trust position. The then Administrator of ARPE, Carlos Gonzalez–Sanchez, and the director of the Central Office for Personnel Administration ("OCALARH"), Aura L. Gonzalez–Rios, recommended the change because the position had acquired the characteristics of a trust position.

On August 18, 1998, Cruz–Velazquez was appointed to a career position within ARPE as Administrative Official V. On February 16, 1999, he was given regular status as Administrative Official V. At the same time he was again appointed to the trust position of Director of Human Resources.

On August 1, 2000, ARPE reclassified (again) the position of Director of Human Resources as a career position. This reclassification, however, was not approved by OCALARH, which is charged with ensuring that any changes in classification are made in compliance with personnel laws. In November 2000, general elections were held in Puerto and the Central Government changed hands from the NPP to the Popular Democratic Party ("PDP"). Pursuant to Puerto Rico law, there is a general prohibition from making any personnel transactions two months before and two months after a general election.[1]

On June 6, 2002, Cruz–Velazquez was served with copy of an administrative complaint filed against him. The complaint detailed the charges that were being brought against him and set the date for a hearing where he would be able to defend himself from the charges. The letter also informed him of his right to appeal any decision to the Administration System Board of Appeals ("JASAP"). On June 10, 2002, Cruz–Velazquez was informed that he was suspended with pay from his position until a final determination was made. On July 11, 2002, a hearing was held where Cruz–Velazquez, represented by an attorney, was allowed to present evidence in his defense. On August 7, 2002, ARPE Administrator Angel D. Rodriguez–Quiñones sent Cruz–Velazquez a letter notifying him of his decision to terminate his employment with ARPE effective August 16, 2002.

On November 26, 2002, the position of Director of Human Resources was once again reclassified as a trust position.

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).

---

1. *See* P.R. Laws Ann. tit. 3 § 1337.

For a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

**B. *Defendants' Motion for Summary Judgment***

**1. *Section 1983 Claims***

 "Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right." *Omni Behavioral Health v. Miller*, 285 F.3d 646, 650–51 (8th Cir.2002); *see also Cruz–Erazo v. Rivera–Montanez*, 212 F.3d 617, 621 (1st Cir.2000). In order for a claim to be cognizable under section 1983, plaintiffs must plead and prove three elements: (1) that the defendants acted un-

der color of state law; (2) that the plaintiffs were deprived of federally protected rights, privileges, or immunities; and (3) that the defendants's alleged conduct was causally connected to the plaintiffs' deprivation, *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir.1989). Hence, to succeed in a section 1983 action, plaintiffs must prove that defendants actions were a cause in fact or a proximate cause of their injury. *See Collins v. City Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

**a. *Political Discrimination***

 "In general, a public employee may not be fired solely because of his political affiliation." *Rosenberg v. City of Everett*, 328 F.3d 12, 17 (1st Cir.2003)(*quoting Branti v. Finkel*, 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). "Dismissal based on political patronage is permissible, however, if 'the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.'" *Id.* (*quoting Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 240 (1st Cir.1986))(*quoting Branti*, 445 U.S. at 518, 100 S.Ct. 1287). "Political discharge is permitted to give a new administration an opportunity to fulfill expectations by surrounding itself with agency leaders and top subordinates responsive to the elected officials' goals.'" *Id.* (*quoting Flynn v. City of Boston*, 140 F.3d 42, 46 (1st Cir. 1998)). "Whether or not a position is subject to political discharge is a legal question for the courts." *Id.* at 18.

Party affiliation is an appropriate requirement for a public position if (1) "the discharging agency's functions entail 'decisionmaking on issues where there is room for political disagreement on goals or their implementation,'" and (2) "the

particular responsibilities of the plaintiff's position resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure."

*Id.* (*quoting Rosenberg v. City of Everett,* 328 F.3d 12, 18 (1st Cir.2003); *Jimenez Fuentes,* 807 F.2d at 241–42).

Defendants argue that it was proper for ARPE to remove plaintiff from his position because, its designation as a career position notwithstanding, the position of Director of Human Resources is a trust position in view of its description, and thus is one which is subject to free selection and removal. They further argue that the change in the position's classification was improper because OCALARH did not approve the change as required by law and that, therefore, it remained as a trust position.

On the other hand, Cruz–Velazquez argues that it is not a trust position because it does not establish public policy, because the advice provided is technical in nature, and because it does not respond directly to the administrator, but is rather placed under the office of internal resources. He further argues that OCALARH did approve the change in the position's classification, and that its approval was not required in this case because of the nature of the change.

According to the official description when it was classified as a trust position, the Director of Human Resources was under the direct supervision of the Administrator and performed, among others, the following functions:

1. Has ample freedom, initiative, and personal judgment to give instructions;

2. Plans, coordinates, manages, supervises, and evaluates the execution of all the activities that are developed in the Human Resources Office;

3. Upon delegation of the Administrator, carries out tasks that require a high degree of trust and discretion;

4. Collaborates in the establishment and coordination, with the Administrator, of the internal public policy of ARPE in everything related to the administration of human resources;

5. Advises, evaluates, and determines appropriate alternatives to solve complex and greatly varied problems that require a high degree of judgment. At his discretion, may consult with the nominating Authority;

6. Advises the ARPE Administrator, officials, and employees about everything related to the administrative policy and to the administration of the Agency's human resources;

7. Drafts official correspondence to be signed by the Administrator related to problems that involve administrative and human resources policy.

(*See* Docket No. 104, Exh. 10). After the change in classification, the main change to the description was that instead of reporting to the Administrator, the Director of Human Resources would report to the Assistant Administrator of Internal Resources. The other functions of the position remained basically the same. Interestingly, the new description indicates that the position performs work that requires a high degree of trust and discretion. (*See Id.*, Exh. 14).

■ Applying the above-mentioned two-prong test to the formal description of the position, the Court finds that indeed the Director of Human Resources makes policy-making decisions. "Th[e] first prong is satisfied (that is, a position may be regarded, at least provisionally, as a policy-making position) as long as the position potentially 'involve[s] government decisionmaking on issues where there is room for political disagreement on goals or their

implementation.' " *Galloza v. Foy*, 389 F.3d 26, 29 (1st Cir.2004)(*quoting Jimenez–Fuentes*, 807 F.2d at 241–242). ARPE is certainly an agency which is involved in the decisionmaking process on issues for which there is room for political disagreement. ARPE is the agency charged with the permit process for any construction project within Puerto Rico and thus plays a vital role in the implementation of any administration's urban planning policies. Because the Director of Human Resources is one of the decision makers within ARPE, it is a position which could affect how policy is made and implemented within the agency.

Furthermore, because the responsibilities assigned to the Director of Human Resources are rather broad in scope, giving the director broad discretion in the performance of his duties, the position is more likely a trust position rather than a career position. *See Elrod*, 427 U.S. at 368, 96 S.Ct. 2673 ("An employee with responsibilities that are not well defined or are broad of scope more likely functions in a policymaking position."). Moreover, one judge from this district has already found that the position of Director of Human Resources is *always* a trust position.

> [T]he Court finds that the position of Human Resources Director, previously commonly known as "Jefe de Personal", is by nature, and in all fields, a trust position and cannot be classified otherwise. It is a position that is properly described as a trust position because of its nature as a policymaking position of great responsibility and intense connection to the administration's goals. The Human Resources Director is one of the most influential executives in the administration of any business.

*Huertas Morales v. Agosto Alicea*, 278 F.Supp.2d 164, 170 (D.P.R.2003). Accordingly, the Director of Human Resources position is a trust position from which Cruz–Velazquez could be removed at will and the defendants did not violate his First Amendment rights.

Even if the Court were to find that the position was correctly classified as a career position, Cruz–Velazquez's claims would still fail. The defendants presented him with a list of charges for which he was being removed from his position.[2] Thus, if the Court were to enter into a discussion of Cruz–Velazquez's claims by applying the oft-used *McDonnell Douglas* burden-shifting framework,[3] it would find that even if he can establish a prima facie case of political discrimination, defendants have proffered a non-discriminatory reason for his termination and the record does not contain sufficient evidence of discrimination to establish pretext.

### b. *Due Process Claims*

 The Due Process Clause guarantees public employees the right to a pretermination hearing. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). As a prerequisite to a due process claim, however, plaintiffs must have a constitutionally cognizable property or liberty interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Correa–Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 53 (1st Cir.1990) (*citing Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). The question of whether a person has a constitutionally protected property interest is answered by an independent, extra-constitutional source such as state law. *See, e.g., Correa–Martinez*, 903 F.2d

---

**2.** (*See* Docket No. 104, Exh. 20).

**3.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

at 53 (*citing Board of Regents,* 408 U.S. at 577, 92 S.Ct. 2701 (1972)). Under Puerto Rico law, a career position is a constitutionally protected property interest. *Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d 1169, 1173 (1st Cir.1988). Persons who hold permanent and career positions are vested with a property interest in their continued employment. Trust positions or career positions that were illegally hired, however, are "neither invested nor entitled to the due process protections which inure to their legally hired counterparts." *Correa–Martinez,* 903 F.2d at 54 (*citing Rosario–Torres v. Hernandez–Colon,* 889 F.2d 314, 319 (1st Cir.1989)).

Because the Court has already determined that the position of Director of Human Resources is a trust position, Cruz–Velazquez could be freely removed from the position. Nevertheless, once he was removed from the trust position Cruz–Velazquez was entitled to be returned to the career position he held as a regular employee before he was named to the trust position, in this case Administrative Official V. See P.R. Laws Ann. tit. 3 § 1350 (repealed effective August 3, 2004). Thus, although not entitled to a pre-termination hearing when being removed from the trust position, he was entitled to one before being terminated from the agency because he held a career position as Administrative Official V. It is undisputed that career employees in Puerto Rico have property rights in continued employment. *See, e.g., Marrero–Gutierrez v. Molina,* 491 F.3d 1, 8–9 (1st Cir.2007).

 Cruz–Velazquez's due process claim fails because he was afforded a hearing before his termination where he had the opportunity to argue and present evidence on his behalf. He argues, however, that the hearing did not comply with due process standards because the hearing was a sham. According to Cruz–Velazquez, the decision to terminate him would prevail regardless of what transpired at the hearing. In support of this contention, he claims that the officer presiding over the hearing did not take any notes or record the proceedings, paid not attention to his evidence, and stated that she was only there to listen to him.

The Court finds that the hearing afforded Cruz–Velazquez was constitutionally adequate under due process standards. All that due process requires is that before termination the employee receive "notice of the charges, an explanation of the evidence that supports those charges, and the ability to refute that evidence." *Id.* (*citing Cepero–Rivera v. Fagundo,* 414 F.3d 124, 134 (1st Cir.2005)). All these elements are present in this case. Cruz–Velazquez was notified of the charges against him, he was given an explanation of the charges as well as the evidence supporting them, and he was afforded a full hearing. There is no allegation that Cruz–Velazquez was not allowed to present his side of the story fully. Due process does not require a guarantee that the charges will be dropped after the hearing.

Therefore, Cruz Velazquez was afforded due process before his termination and his claim must be dismissed.

### c. *Fifth Amendment Claims*

The due process clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. Const. Amend. V. "It is applicable to the actions of the federal government and not those of private individuals." *Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447, 449 (1st Cir.1983)(*citing Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952)).

Because Cruz–Velazquez's claims involve only state actors and he makes no allegations against the federal government or

any person for whom the federal government is responsible, his Fifth Amendment claims must be dismissed.

### 2. Section 1985 Claims

 42 U.S.C. § 1985(3) protects persons from conspiracies that would deprive that person, or any class of persons, of their Constitutional rights.

> To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.

*Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Additionally, the statute requires evidence of "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

 Accordingly, in order for plaintiffs to have a viable claim, they must belong to a constitutionally protected class under section 1985(3). To plaintiffs' dismay, however, this Court has repeatedly held that "[b]eing a member of a political party does not constitute a protected class envisioned by Congress when it created § 1985(3)." *See Torres Ocasio v. Melendez,* 283 F.Supp.2d 505, 518 (D.P.R.2003); *Reyes v. Municipality of Guaynabo,* 59 F.Supp.2d 305, 310 (D.P.R.1999); *Morales–Narvaez v. Rossello,* 852 F.Supp. 104, 114–15 (D.P.R.1994); *Rodriguez v. Nazario,* 719 F.Supp. 52, 55–56 (D.P.R.1989).

Because plaintiff alleges that there was a conspiracy against him solely because he belonged to the NPP, he has failed to establish membership in a protected class for section 1985's purposes. Therefore, Cruz–Velazquez's section 1985 claim lacks any merit and must be dismissed.

### 3. Supplemental State Law Claims

Because no federal claims to ground jurisdiction remain in this case, plaintiffs' supplemental state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment. Plaintiffs' federal claims are dismissed **with prejudice.** Supplemental state law claims are dismissed **without prejudice.** Judgment shall enter accordingly.

IT IS SO ORDERED.