# United States Court of Appeals
## For the First Circuit

No. 15-2193

FULL SPECTRUM SOFTWARE, INC.,

Plaintiff, Appellee,

v.

FORTE AUTOMATION SYSTEMS, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Torruella, Lynch, and Barron,
Circuit Judges.

Eric H. Loeffler, with whom Hinshaw & Culbertson LLP was on brief, for appellant.
David M. McGlone, with whom Christian B.W. Stephens and Eckert, Seamans, Cherin & Mellott, LLC were on brief, for appellee.

June 2, 2017

**BARRON**, **Circuit Judge**.  This appeal concerns a dispute between two businesses: Forte Automation Systems, Inc. ("Forte"), the defendant-appellant, and Full Spectrum Software, Inc. ("Full Spectrum"), the plaintiff-appellee.  Their dispute requires us to resolve two distinct legal issues.  The first turns on whether the evidence in the record suffices to sustain the jury's verdict and chiefly concerns the scope of the Massachusetts catch-all consumer protection statute, chapter 93A.  See Mass. Gen. Laws ch. 93A. The other turns on whether Full Spectrum had a right to have its chapter 93A claim for damages tried by a jury in federal court at all.  Because we decide both issues in favor of Full Spectrum, we affirm.

## I.

The following facts are uncontested.  This dispute dates back to June of 2011.  At that time, Forte executed a contract with ProTom International, Inc. ("ProTom").  Under that contract with ProTom, Forte agreed to engineer specialized software for a proton radiation therapy station in a cancer treatment hospital. Full Spectrum became involved in the following way.

After Forte secured the contract with ProTom, Forte executed a subcontract to complete the project with Medical Instruments, Co., doing business as Civco Medical Solutions ("Civco").  Civco, in turn, subcontracted software development services for the project to Full Spectrum.  On or about April 16,

- 2 -

2012, however, Civco pulled out of the project. And, on April 16, a representative from Civco informed Full Spectrum, over email, that "starting today, all work performed on the product should be billed to Forte," and that Forte would want a quote on the remaining work.

The next day, April 17, the president of Full Spectrum, Andrew Dallas, emailed the president of Forte, Toby Henderson, to confirm that Forte would be taking over management of the project. In that email, Dallas told Henderson, "In order to make the transition, we'll need to get our Consulting Services Agreement (CSA) in place with Forte along with a Work Order for the project." Dallas attached the CSA, along with Full Spectrum's billing rates, to the email. No Work Order was attached. Forte's Project Manager, Ed Roman, replied on April 18, directing Full Spectrum to continue work on the project.

In accord with Roman's email, Full Spectrum continued to work on the project over the next several weeks. Full Spectrum also billed Forte on April 30, May 7, and May 14, in the total amount of $133,053.75. As we discuss in more detail below, the parties also continued to work out aspects of their commercial terms. On May 3, Forte and Full Spectrum signed the CSA. Full Spectrum then sent Forte the Work Order -- which contained specific details about the project -- and repeatedly requested that Forte sign it. On May 14, Forte presented Full Spectrum with a Purchase

Order, which contained terms that were different from those in Full Spectrum's CSA and Work Order, and that were adverse to Full Spectrum.[1]  On that same date, Full Spectrum terminated its involvement with the project.  Forte subsequently refused to compensate Full Spectrum for the work that Full Spectrum had completed between April 16 and May 14.

On August 10, 2012, Full Spectrum, which is based in Massachusetts, filed this diversity suit against Forte, which is based in Illinois, in federal court in the District of Massachusetts.  In the complaint, Full Spectrum alleged various claims under Massachusetts law, only two of which remain at issue on appeal.  These two claims are for breach of implied contract and violation of chapter 93A.

Prior to trial, Full Spectrum moved to submit the chapter 93A claim to a binding jury, or, in the alternative, to an advisory jury.  Forte objected under Rule 39 of the Federal Rules of Civil Procedure to submitting the claim to a binding jury, arguing that there is no right to a jury trial -- under state or federal law

---

[1] For instance, the CSA required payment within 30 days of a billing date, whereas the Purchase Order allowed for payment within 60 days of a billing date; the CSA provided that Full Spectrum's work product was under "no warranties of any kind, either express or implied," whereas the Purchase Order required a number of explicit warranties; and the CSA provided for termination by mutual agreement or at the completion of project phases, with 30 days' notice, whereas the Purchase Order provided that, in the case of seller default, Forte could cancel the agreement "at any time."

-- for claims under chapter 93A.  The District Court granted Full Spectrum's motion without comment.

At the close of evidence, Forte submitted a motion under Rule 50(a) of the Federal Rules of Civil Procedure for judgment as a matter of law.  In its motion, Forte contended that there was not sufficient evidence to support a finding for Full Spectrum on either the implied contract or the chapter 93A claim.  The District Court denied the motion without comment.

Before the jury began deliberations, the District Court instructed the jury, "I have no opinion about what the facts are or what your verdict ought to be; that is solely and exclusively your duty and responsibility."  The jury then was given a special verdict form and returned the following verdict.  The jury found Forte liable for breach of implied contract and for knowing and willful violation of chapter 93A.  The jury awarded Full Spectrum $133,053.75 in actual damages, without specifying whether those damages arose from the breach of implied contract, from the violation of chapter 93A, or from some combination of the two.  The jury also awarded Full Spectrum $350,000 in punitive damages specifically based on the violation of chapter 93A.

In entering the judgment, the District Court noted that the judgment reflected a jury verdict, rather than a decision by the District Court itself.  Forte then renewed its motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal

Rules of Civil Procedure.  The District Court denied the motion without comment.

On appeal, Forte challenges the District Court's denial of Forte's motion for judgment as a matter of law on both Full Spectrum's implied contract claims and on its chapter 93A claims, contending that there was not sufficient evidence to support the jury's verdict on either claim.  Forte also challenges the District Court's decision to submit Full Spectrum's chapter 93A claim to a jury notwithstanding Forte's objection under Rule 39.[2]

**II.**

We begin with Forte's challenge to the denial of Forte's motion for judgment as a matter of law based on insufficient evidence.  Our review is de novo.  Jones ex rel. U.S. v. Mass. Gen. Hosp., 780 F.3d 479, 487 (1st Cir. 2015).  We "must affirm unless the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment."  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13 (1st Cir. 2009) (citation omitted).  We must refrain from passing judgment upon the credibility of witnesses, resolving

---

[2] Full Spectrum contends that we lack jurisdiction over this appeal because Forte's Notice of Appeal was prematurely filed. This argument, however, is without merit in light of the 2009 amendments to Rule 4 of the Federal Rules of Appellate Procedure.

evidentiary conflicts, or evaluating the weight of the evidence. Delgado v. Pawtucket Police Dep't, 668 F.3d 42, 50 (1st Cir. 2012).

**A.**

As noted above, the jury found that Forte was liable for both breach of implied contract and for violating chapter 93A. The jury awarded Full Spectrum the entire amount that Full Spectrum claimed in actual damages without specifically basing that award on either theory of liability. Forte makes no argument that, because the damages award was aggregated, that award cannot be sustained unless we sustain both theories of liability as a matter of law. In fact, at oral argument, Forte expressly conceded the opposite. As a result, we may uphold the judgment for actual damages so long as there is sufficient evidence in the record to sustain either the implied contract claim or the chapter 93A claim. Moreover, the jury additionally awarded Full Spectrum $350,000 in punitive damages, and predicated the punitive damages solely on the finding that Forte's chapter 93A violation was knowing and willful. Thus, the parties agree that the entire judgment -- encompassing the award of both actual and punitive damages -- can stand so long as the chapter 93A verdict can stand. We therefore focus on whether the record provides sufficient support for the jury's verdict on that claim.

Chapter 93A makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen.

Laws ch. 93A § 2. Section 11 of the statute extends its protections to business entities. Id. at §§ 9, 11. Chapter 93A does not define what constitutes an unfair or deceptive act or practice. And, though "the boundaries of what may qualify for consideration as a [chapter 93A] violation is a question of law," "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact." Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 39 (1st Cir. 2000) (quoting Schwanbeck v. Fed. Mogul Corp., 578 N.E.2d 789, 803-04 (Mass. App. Ct. 1991)).

To determine whether conduct is unfair, the finder of fact must assess whether the conduct "falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). And to determine whether conduct is deceptive, the finder of fact must assess whether the conduct "possesses a tendency to deceive" and "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (alteration in original) (quoting Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 486 (Mass. 2004)).

- 8 -

Full Spectrum contends that the record suffices to show that Forte knowingly and intentionally violated chapter 93A in a number of ways.[3]  We focus on only one of these ways here, in which Full Spectrum contends that Forte violated chapter 93A by intentionally "stringing along" Full Spectrum for Forte's benefit and to Full Spectrum's detriment.  See Greenstein v. Flatley, 474 N.E.2d 1130, 1133-34 (Mass. App. Ct. 1985) (finding a chapter 93A violation where defendants engaged in a "pattern of conduct . . . calculated to misrepresent the true situation to the plaintiff, keep him on a string, and make the plaintiff conclude -- reasonably -- that [a] deal had been made"); see also Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69-70 (1st Cir. 2009) (explaining that "stringing along a counterparty to induce detrimental reliance can constitute a chapter 93A violation" because "Massachusetts cases . . . recognize a need to police negotiations -- even those among relatively sophisticated parties -- to ensure that they are not unfair or deceptive" (citation omitted)).

Specifically, Full Spectrum contends that the record supports the finding that Forte deliberately delayed and failed to

---

[3] To the extent that Forte contends that the jury's chapter 93A verdict is necessarily based on there having been a contract in place that was breached, there is nothing in the jury

- 9 -

sign the Work Order, while taking steps to induce Full Spectrum to believe that Forte would sign it. And, Full Spectrum goes on to argue, the record also supports the finding that Forte then attempted to leverage Full Spectrum's financial exposure through the work it had done in order to coerce Full Spectrum into signing Forte's Purchase Order, which contained terms adverse to Full Spectrum relative to the terms that would have been binding had the Work Order been signed. We agree.

First, the record shows that Forte was aware that Full Spectrum expected Forte to sign the Work Order from the very beginning of the relationship between Full Spectrum and Forte. From its first email to Forte on April 16, Full Spectrum made clear to Forte that the two of them would "need to get" the Work Order in place. In that email, Full Spectrum explained, "[W]e will have to start with a 'block' Work Order expressing engineering time and budget in order to allow us to continue to make progress while preparing the estimate based upon the updated requirements."

The record also provides support for finding that Forte knew both that, unless the Work Order was signed, the CSA would

---

instructions that supports this argument. In any event, the argument is waived, as Forte failed to include it in Forte's motion under Rule 50(a) of the Federal Rules of Civil Procedure for judgment as a matter of law. See Jones, 780 F.3d at 487 (a failure to raise a challenge in a pre-verdict Rule 50(a) motion for judgment as a matter of law results in a waiver of that issue on appeal).

not take effect -- even if separately signed -- and that the CSA contained terms that were important to Full Spectrum and favorable to it. Indeed, the District Court in this case found (in an earlier ruling on the parties' cross-motions for partial summary judgment), and neither party contests, that the CSA did not, on its own, constitute an enforceable contract because -- rather than specifying the terms of the agreement -- the CSA was designed to incorporate such terms by reference to the Work Order. For example, the CSA did not identify the project at issue, instead providing that "Full Spectrum shall perform the service for the project identified in the Work Order which is attached hereto." And Full Spectrum made it clear to Forte from its first email to Forte that Full Spectrum would "need to get our Consulting Services Agreement (CSA) in place along with a Work Order."

These aspects of the record are significant for the following reason. The record supportably shows that, even though Forte was aware that Full Spectrum expected Forte to sign the Work Order from the beginning, Forte had no intention of doing so. And yet, the record supportably shows, rather than informing Full Spectrum at any point that it had concerns with the Work Order, Forte actually took actions to induce Full Spectrum to conclude otherwise so that it would continue working for Forte.

In particular, on May 3, 2012, Toby Henderson and Andrew Dallas, the presidents of Forte and Full Spectrum, respectively,

- 11 -

met in person. At that meeting, Forte signed Full Spectrum's CSA. But while the signing of the CSA could reasonably have been understood to indicate that Forte intended to then sign the Work Order, Forte's president, Toby Henderson, testified at trial that he in fact had no such intention. Rather, he testified that the reason he signed the CSA was because a representative from ProTom "was in the next room" and Henderson felt pressure to report to ProTom that he had a subcontractor working on the project.

Then, in the weeks following the May 3 meeting at which the CSA had been signed, Full Spectrum continued to request that Forte sign the Work Order. Forte, however, failed to respond to Full Spectrum's repeated requests, even though evidence in the record shows that Forte knew that Full Spectrum was continuing to work on the project.

Finally, the record shows that Full Spectrum eventually informed Forte that Full Spectrum would have to leave the project if it did not receive the signed Work Order. At that point, Forte's Project Manager, Ed Roman, responded with an affirmative assurance that Forte would sign the Work Order. Specifically, Roman promised Full Spectrum that Forte would send the signed Work Order by the morning of May 14, 2012. But, notwithstanding that statement, on May 14, Forte did not send Full Spectrum the signed Work Order. Forte instead sent Full Spectrum a copy of Forte's own Purchase Order, which was materially less favorable to Full

- 12 -

Spectrum than Full Spectrum's CSA and Work Order.  It was at that point that Full Spectrum pulled out of the project.

Drawing "all reasonable inferences in favor of the verdict," Astro-Med, 591 F.3d at 13, we conclude that a jury reasonably could find the following.  Forte was aware from the first day of its relationship with Full Spectrum that Full Spectrum intended for the CSA and Work Order together to constitute the contract between the parties.  Forte was also aware that the CSA on its own would not become an enforceable contract unless Forte signed both documents.  But, even though Forte had no intention of being bound by the CSA, Forte chose to string Full Spectrum along for several weeks by signing the CSA and telling Full Spectrum that it would also sign the Work Order without ever doing so.  And then, at the last moment, and with no attempt at discussion or negotiation, Forte substituted Full Spectrum's Work Order with Forte's own Purchase Order, which was materially less favorable to Full Spectrum.

Thus, while Forte contends that this case is not "anything more than a dispute over whether money was owed," which would not give rise to a violation of chapter 93A, see Duclersaint v. Fed. Nat'l Mortg. Ass'n, 696 N.E.2d 536, 540 (Mass. 1998), a jury could reasonably find that Forte had strung Full Spectrum along in order to take advantage of Full Spectrum's financial exposure in its attempt to replace the terms in Full Spectrum's

- 13 -

CSA with the terms in Forte's Purchase Order. Accordingly, we reject Forte's challenge to the District Court's denial of Forte's motion for judgment as a matter of law.

In so holding, we recognize that Section 11 of chapter 93A subjects businesses to "a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct." Giuffrida v. High Country Inv'r, Inc., 897 N.E.2d 82, 95 (Mass. App. Ct. 2008); see also Buster, 783 N.E.2d at 413 ("[T]he market is a rough and tumble place where a competitor's lack of courtesy, generosity, or respect is neither uncommon nor in itself unlawful."). But, one business's stringing along of another to the other's detriment can satisfy that stricter standard. See Greenstein, 19 Mass. App. Ct. at 358 (affirming chapter 93A judgment where the stringing along of sophisticated plaintiff, an accounting firm, went "beyond the toleration even of persons inured to the rough and tumble of the world of commerce"). And, here, a reasonable jury could have found that Forte's conduct violated even the heightened standard that applies to conduct between business entities under chapter 93A.

Finally, while Forte contends that there was not sufficient evidence to support the jury's imposition of punitive damages on the chapter 93A claim because Full Spectrum failed to show that Forte's violation of chapter 93A was knowing and willful, Forte failed to argue that its chapter 93A violation was not

- 14 -

knowing and willful in its Rule 50(a) pre-verdict motion for judgment as a matter of law.  Thus, the issue is waived.  Costa-Urena v. Segarra, 590 F.3d 18, 26 n.4 (1st Cir. 2009) ("It is well-established that arguments not made in a motion for judgment as a matter of law under Rule 50(a) cannot then be advanced in a renewed motion for judgment as a matter of law under Rule 50(b).").

## III.

We now turn to the aspect of Forte's argument that relies on Federal Rule of Civil Procedure 39(c), which prohibits courts from submitting claims to a binding jury in the absence of the defendant's consent unless those claims are triable by jury as of right.  The parties agree that Rule 39(c) permitted the District Court to submit the chapter 93A claim to a binding jury over Forte's objection only if chapter 93A claims are triable to a jury as of right in federal court under the federal Constitution.[4] Forte therefore rests its argument to us on the same ground that it pressed below: that the Seventh Amendment does not guarantee a right to trial by jury for chapter 93A claims in federal courts.[5]

---

[4] The Massachusetts Supreme Judicial Court has held that there is neither a statutory right to a jury trial nor a constitutional right to a jury trial under the Massachusetts state constitution for a claim under chapter 93A.  Nei v. Burley, 446 N.E.2d 674, 677-79 (Mass. 1983).

[5] In submitting the case to the jury over Forte's objection, the District Court did not explicitly hold that Full Spectrum had a Seventh Amendment right to a jury trial for its chapter 93A

- 15 -

As Forte brings only a legal challenge under Rule 39(c) to the District Court's ruling that Full Spectrum was entitled to a jury trial as of right, we review that ruling de novo.  See Mile High Indus. v. Cohen, 222 F.3d 845, 855 & n.8 (10th Cir. 2000).

A Rule 39 error is harmless where "only one reasonable verdict was possible from the evidence," but is not harmless "[i]n close cases" where "the losing parties' right to appellate review can be prejudiced."  Troy v. City of Hampton, 756 F.2d 1000, 1003 (4th Cir. 1985).  But here, it is not clear from the record that "only one reasonable conclusion was possible from the evidence," such that "the district judge would not have been justified in disregarding the jury's verdict."  See Dombeck v. Milwaukee Valve Co., 40 F.3d 230, 237 (7th Cir. 1994).  Thus, Forte contends that if we agree it was an error to try the case by jury over Forte's objection, we must vacate and remand so that the District Court may enter its own findings of fact and conclusions of law on the basis of the evidence adduced at the trial that was held.  See id. (ordering the case be "remanded for factfinding by the judge

---

claim.  But the record shows -- and the parties agree -- that the District Court gave the case to a binding jury, not an advisory one.  Accordingly, we understand the District Court's summary denial of Forte's opposition to Full Spectrum's motion for a jury, in which Forte argued that Full Spectrum did not have a Seventh Amendment right to a jury trial, to have impliedly found that such a right obtains.

independent of the jury's verdict").  Accordingly, we turn to the merits of the Seventh Amendment issue.[6]

The Jury Trial Clause of the Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S. Const. amend. VII.  The phrase "suits at common law" refers not only to causes of action that existed in 1791, when the Seventh Amendment was adopted, but also to new causes of action created by statute, as long as those statutes "create[] legal rights and remedies, enforceable in an action for damages in the ordinary courts of law."  Curtis v. Loether, 415 U.S. 189, 192 (1974).  To determine whether a statute "creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law," we undertake a three-part inquiry.

First, we "compare the new statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."  Braunstein v. McCabe, 571 F.3d 108, 118 (1st Cir. 2009) (quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989)).  We do so to determine whether the current action is "analogous to common-law causes of action

---

[6] Full Spectrum does not argue that the Rule 39 issue has been waived in consequence of Forte's failure to raise the issue at any point after its initial objection.

- 17 -

ordinarily decided in English law courts in the late 18th century."
Id.

Second, we "examine the remedy sought and determine whether it is legal or equitable in nature. This stage of the analysis is more important than the first stage." Id. (quoting Granfinanciera, 492 U.S. at 42).

Finally, if the first two inquiries indicate that a party has a jury trial right, we need to undertake one more. We must determine if Congress has "assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder," such as the Bankruptcy Court. Id. (quoting Granfinanciera, 492 U.S. at 42). For, if Congress has done so, then we must assess whether the legal claim at issue is a "private or a public right" in order to determine whether the legislative assignment is permissible. Id.

Here, it is only the first inquiry that is at issue. For, although some types of money damages, such as restitutionary damages, may be equitable, "the relief sought here -- actual and punitive damages -- is the traditional form of relief offered in the courts of law." Curtis, 415 U.S. at 196. Nor is there any issue regarding the third inquiry. Thus, we need focus only on whether chapter 93A is analogous to those causes of action that could have been tried in courts of law, rather than in courts of equity, in late 18th-century England.

- 18 -

Chapter 93A is a catch-all statute that makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2 (emphases added). As each of chapter 93A's constituent parts is itself distinct, a chapter 93A claim may be predicated on an underlying claim of unfair methods of competition, unfair acts or practices, or deceptive acts or practices. See Serv. Publ'ns, Inc. v. Goverman, 487 N.E.2d 520, 527 (Mass. 1986) ("The jury could have found [the defendant's] business practices to be unfair without being deceptive or fraudulent.").

It is possible that, where a claim is brought under a particular constituent part of chapter 93A, the proper approach to the Seventh Amendment inquiry would be to determine whether there was an analogous common-law cause of action in English courts of the late 18th century. See John T. Montgomery & Sarah E. Wald, The Right to Trial by Jury in c. 93A Actions, 67 Mass. L. Rev. 79, 83 (1982). But here, the jury was instructed to consider this chapter 93A claim as one undifferentiated whole, and Forte does not ask us to treat it otherwise. We thus evaluate Full Spectrum's chapter 93A claim in the aggregate. And, considered that way, the cause of action at issue appears to be encompassed by the Seventh Amendment.

Specifically, Full Spectrum's chapter 93A claim necessarily encompassed a claim for "deception," which does appear

to be a claim that is analogous to 18th-century actions at law, such as fraud, deceit, or misrepresentation.  See, e.g., Pasley and Another v. Freeman (1789) 100 Eng. Rep. 450 (claim for misrepresentation and deceit brought as an action at law in the Court of King's Bench); see also In re Evangelist, 760 F.2d 27, 32 (1st Cir. 1985) (Breyer, J.) (misrepresentation is "a classical tort action brought 'at law'"); 3 William Blackstone, Commentaries *432 ("[E]very kind of fraud is equally cognizable, and equally adverted to, in a court of law" as in a court of equity, "and some frauds are only cognizable [in a court of law], as fraud in obtaining a devise of lands.").  That fact is significant because the Supreme Court has explained that, where a cause of action "encompasses both equitable and legal issues[,] [t]he first part of [the] Seventh Amendment inquiry . . . leaves [courts] in equipoise," Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570 (1990), thereby making dispositive the other two inquiries.  And, as we have explained, each of these inquiries favors Full Spectrum in this case.  Thus, the Seventh Amendment would appear to encompass the claim that the jury heard here, whether or not a claim under chapter 93A for "unfair" conduct -- like one for deception -- also is properly analogized to claims traditionally tried in courts of law.  But see Allan Farnsworth, Farnsworth on Contracts § 4.28, at 580 (3d ed. 2004)

("[U]nconscionability was historically a matter for equity where there was no jury.").

Moreover, in asking us to reverse the District Court, Forte offers no developed argument as to why we should conclude that an undifferentiated chapter 93A claim is analogous to a claim that would have been tried in a court of equity in late 18th-century England and not to one that would have been tried in a court of law. Forte does appear to imply that Full Spectrum's claim is not of this latter type in asserting that "equitable claims are to be tried by the Court unless both parties consent to a jury trial." But that passing assertion is not remotely close to a developed argument that a chapter 93A claim is necessarily analogous to an equitable one, at least when considered in the aggregate. Thus, any such argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Forte does assert in conclusory fashion that there is no right to a jury trial on chapter 93A claims because chapter 93A "created new substantive rights in which conduct heretofore lawful under common and statutory law is now unlawful." But, it is clear that a statute which creates a new right may still trigger a jury trial right. Such a statutory right need only be analogous to a cause of action traditionally triable by the courts of law to fall within the Seventh Amendment's ambit. See Curtis, 415 U.S. at 193-94 (holding that the Seventh Amendment does apply to actions

- 21 -

enforcing newly enacted statutory rights so long as they are "analogous" to those that could have been brought at law in 18th-century England).  And, as we have noted, Forte makes no developed argument as to why a chapter 93A claim is not so analogous.  Thus, in pressing this argument, Forte again provides us with no reason to reverse the ruling below regarding Rule 39.

Forte's final argument is that our controlling precedent holds that chapter 93A claims are not encompassed by the Seventh Amendment.  But, this argument, though developed, fails because it relies upon a misreading of our precedent.

To be sure, Forte is right that in Wallace Motor Sales, Inc. v. American Motor Sales Corp., 780 F.2d 1049, 1063-64 (1st Cir. 1985), we did reference the Supreme Judicial Court's decision in Nei v. Burley, 446 N.E.2d 674 (Mass. 1983), which held that there is no right to a jury trial for chapter 93A actions under the Massachusetts Constitution.[7]  And, in doing so, we did state that "the reasoning employed by the Massachusetts Supreme Judicial Court in Nei is determinative of the [S]eventh [A]mendment issue."

---

[7] Despite the fact that there is no state constitutional right to trial by jury in chapter 93A cases in Massachusetts courts, "the jury trial of chapter 93A cases became routine and continues to this day," as "justices of the Superior Court went right on trying chapter 93A cases to a jury whenever related contractual or tort claims deserved such a trial and where it served judicial efficiency."  Mass. Eye & Ear Infirmary v. QLT, Inc., 495 F. Supp. 2d 188, 194 (D. Mass. 2007), aff'd in part, vacated in part, Mass. Eye & Ear Infirmary, 552 F.3d 47.

But, our subsequent precedent has made clear that Wallace is not determinative of the Seventh Amendment question. In particular, in Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 97 (1st Cir. 2014), we explained that the statement in Wallace on which Forte relies was dicta because the parties in Wallace had stipulated that claims under chapter 93A do not command a right to a jury trial. Id. (citing Wallace, 780 F.2d at 1064). Frappier also explained that Nei offered a construction of the jury trial right under the Massachusetts Constitution, not the Seventh Amendment to the federal Constitution, and "a litigant's right to a jury under the Seventh Amendment for state-law claims in federal court is a matter of federal, not state, law." Id.; see also Simler v. Conner, 372 U.S. 221, 222 (1963) (per curiam) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."); Byrd v. Blue Ridge Rural Elec. Co-op., Inc., 356 U.S. 525, 538–39 (1958) (holding that Seventh Amendment right to jury trial in federal court may exist even with respect to a state-created right and even when a state statute or state constitution would preclude a jury trial in state court). Thus, Frappier made clear that "a litigant seeking legal relief in federal court under chapter 93A may be entitled to a jury," "[r]egardless of any contrary language in Wallace." Frappier, 750 F.3d at 98.

- 23 -

Forte does also cite to our more recent decision in Baker v. Goldman, Sachs & Co., 771 F.3d 37 (1st Cir. 2014), in which we stated in a footnote that "[t]here is no right to trial by jury for claims brought under ch. 93A." Id. at 48 n.5. But, the parties in Baker, like those in Wallace, did not actually raise the question whether there is a Seventh Amendment right to trial by jury for chapter 93A claims. Rather, in that case, the jury decided the plaintiff's common-law claims, and the district court decided the plaintiff's chapter 93A claims. Id. at 49. As such, Baker, like Wallace, does not decide the question. Accordingly, there is no precedent from our circuit that resolves whether the Seventh Amendment requires that a chapter 93A claim be tried to a jury in federal court, and Forte's claims to the contrary are misplaced.

Thus, given that Forte offers no developed, meritorious argument for why the District Court erred in submitting Full Spectrum's claim to a jury; that this chapter 93A claim was brought in the aggregate; and that one of its constituent parts appears to be analogous to the kind of tort action over which the courts at law traditionally had jurisdiction, we reject Forte's request for reversal. We leave for another day a fuller consideration of the extent to which the Seventh Amendment may apply to chapter 93A claims.

## IV.

For the foregoing reasons, we **affirm** the denial of Forte's motion for judgment as a matter of law and **affirm** the submission of the chapter 93A claim to the jury.