NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1188

GREEN PARADISE SERVICES, LLC & another[1]

vs.

HATCH LANDSCAPE & DESIGN, INC.[2] & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A general contractor, Hatch Landscape & Design (Hatch), hired a subcontractor, Green Paradise Services (Green Paradise), to clear snow and ice at various businesses. Although Green Paradise performed its contractual obligations throughout the winter season, Hatch paid it only a fraction of what it was owed. After Hatch ignored repeated requests for payment, as well as a G. L. c. 93A demand letter, Green Paradise filed suit. Following a trial in the Superior Court, the jury found Hatch

---

[1] Bruno Amaral did not participate in this appeal.

[2] Formerly known as The Hatch Group, Inc.

[3] Jared Hatch and Robert Hatch did not participate in this appeal.

liable for breaching the contract and violating G. L. c. 93A, § 11, and the judge subsequently awarded Green Paradise attorney's fees and costs under c. 93A, § 11. On appeal, Hatch does not challenge the jury's verdict as to the contract claim, but argues that because the evidence was insufficient to establish its liability under c. 93A, § 11, its motions for a directed verdict and judgment notwithstanding the verdict should have been allowed as to that claim. We agree and, accordingly, reverse so much of the corrected judgment as awards Green Paradise double damages, attorney's fees, and costs under c. 93A.

Background. In summarizing the facts that the jury could have found at trial, we draw all reasonable inferences in favor of the plaintiff, Green Paradise. See Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 94 & n.5 (2009).

Hatch and Green Paradise entered into a contract in November 2018. Under its terms, Green Paradise would perform plowing and deicing services for some of Hatch's customers during the 2018-2019 winter, Hatch would be invoiced, and Hatch would pay Green Paradise within forty-five days of each invoice. Green Paradise invoiced Hatch for services provided at twelve locations throughout the winter. Although Hatch paid Green Paradise $9,415 in response to some invoices issued at the start of the season, it did not pay $90,717 on the remaining invoices.

2

Bruno Amaral, Green Paradise's owner, testified that he repeatedly contacted Hatch's office by e-mail and phone seeking full payment of the remaining invoices, but was told that only Jared Hatch, Hatch's owner, could approve payment to Green Paradise and that he had not done so. Amaral further testified that neither Hatch nor its customers ever complained about Green Paradise's performance or the quality of its services.

In his testimony, Jared Hatch confirmed that Hatch had been fully paid by its customers and that none of the customers had complained about Green Paradise's work. He maintained that Green Paradise breached its contractual obligation because it did not use a global positioning system (GPS) tracking device or a mobile application while performing its services, and he suggested that Green Paradise overbilled for its time and services on various jobs. He conceded, however, that he never brought those concerns to Green Paradise's attention, and he had no records showing that any other Hatch employee did either.[4]

At the close of evidence, Hatch moved for a directed verdict, which the judge denied. Answering a special verdict form, the jury found that Green Paradise substantially performed

---

[4] Amaral testified that Hatch never provided GPS devices to Green Paradise, despite multiple requests for them, and a former Hatch employee testified that some subcontractors did not receive the devices because they did not work properly.

3

its obligations under the contract, and that Hatch breached the contract and also committed an unfair or deceptive act or practice in violation of c. 93A, § 11. The jury awarded Green Paradise $80,000 in contract damages and awarded double damages for the c. 93A violation. Hatch then moved for judgment notwithstanding the verdict, which was also denied. In a separate decision and order, the judge granted Green Paradise's request for reasonable attorney's fees and costs under c. 93A, § 11. A corrected judgment ultimately issued awarding Green Paradise $80,000 in contract damages; $80,000 in double damages under c. 93A, § 11; $72,434 in attorney's fees and costs; and interest.

Discussion. "When reviewing the denial of a motion for directed verdict or judgment notwithstanding the verdict, we apply the same standard as the trial judge." Parsons v. Ameri, 97 Mass. App. Ct. 96, 105 (2020). We "construe the evidence in the light most favorable to the nonmoving party and disregard that favorable to the moving party." O'Brien v. Pearson, 449 Mass. 377, 383 (2007). "Our duty in this regard is to evaluate whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant].'" Id., quoting Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 121 (1992).

4

On appeal, Hatch does not dispute that it breached the contract by failing to fully pay Green Paradise for the services it performed.  Hatch also violated the provision in the contract that required it to pay invoices within forty-five days and prohibited it from withholding payment for longer than sixty days "unless there is a dispute over [a] specific invoice."  The only question is whether Hatch's conduct also amounted to a violation of G. L. c. 93A, § 11.  In determining whether a defendant engaged in unfair or deceptive conduct in violation of c. 93A, § 11, we avoid "uninstructive phrases" such as "level of rascality" and "rancid flavor of unfairness," and instead "focus on the nature of challenged conduct and on the purpose and effect of that conduct" (quotations omitted).  Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995).

It is well established that "a breach of contract, even if intentional, does not in itself amount to an unfair act or practice under G. L. c. 93A, § 11."  H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 20 n.13 (2022).  See Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985), citing Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-101 (1979) ("mere breaches of contract, without more, do not violate chapter 93A").  Rather, an "additional factor" is needed to establish liability under c. 93A.  H1

5

Lincoln, 489 Mass. at 17 n.12, quoting Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992).

A c. 93A claim may arise from a breach of contract if the breach is "in disregard of known contractual arrangements" and intended "to secure benefits for the breaching party." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991) (quotation omitted). For example, a party may violate c. 93A if it uses "breaches of contract, or threatened breaches, as leverage to extract additional benefits not covered by the contract." H1 Lincoln, 489 Mass. at 15. In H1 Lincoln, a landlord violated c. 93A by intentionally breaking the terms of the lease in an attempt to force the lessee to sell a different property to the landlord for one dollar. Id. at 7-8, 17. In other cases, liability under c. 93A was found where the defendant withheld performance without justification in an attempt to renegotiate the terms of the parties' relationship. See Anthony's Pier Four, 411 Mass. at 461-462, 474-476 (withholding of architectural approval in order to extort renegotiation of financial terms of joint development project found to violate c. 93A); Pepsi-Cola, 754 F.2d at 17-19 (customer withheld payment to distributor as leverage in bargaining to receive more product in future).

In this case, there is no evidence that Hatch withheld payment to force Green Paradise "to do what otherwise it could

6

not be legally required to do." Pepsi-Cola, 754 F.2d at 18.
Hatch did not attempt to extort Green Paradise into providing
additional benefits not covered by the parties' contract. Nor
did Hatch attempt to renegotiate the terms of their contractual
relationship. Green Paradise argues that Hatch's refusal to pay
was an attempt to pressure it into accepting "cents on the
dollar for its work." The record is devoid of evidence,
however, that Hatch had sought to impose "new and adverse
contract terms," such as a lower rate of payment for Green
Paradise's work. See H1 Lincoln, 489 Mass. at 16, citing Full
Spectrum Software, Inc. v. Forte Automation Sys., Inc., 858 F.3d
666, 674 (1st Cir. 2017). See also Community Bldrs., Inc. v.
Indian Motorcycle Assocs., Inc., 44 Mass. App. Ct. 537, 557-559
(1998). To the contrary, despite repeated inquiries from Green
Paradise, Hatch did not provide any explanation regarding its
refusal to pay the remaining invoices.[5] An intent "to extract
additional benefits not covered by the contract" cannot be
reasonably inferred where the defendant did nothing more than
breach a contract and refuse to say why. H1 Lincoln, supra at
15.

---

[5] Because Hatch did not offer evidence that it notified
Green Paradise about its purported overbilling or any other
issue involving its performance, we reject Hatch's argument that
it should not have been held liable under c. 93A, § 11, due to
"a legitimate dispute over the value of [Green Paradise's]
services."

7

Nor can c. 93A liability be inferred from the fact that Hatch paid Green Paradise for its services at the start of the winter season. Green Paradise argues that the jury could have reasonably inferred that "those initial payments constituted a ploy to induce Green to continue to plow that winter," and Amaral testified that he stopped pursuing work from other potential customers after entering into the contract with Hatch. To establish a c. 93A claim, however, a party's extortionate conduct must arise from its breach or threatened breach of a contract, not from its initial compliance with the contract. See H1 Lincoln, 489 Mass. at 15.

To be sure, the evidence at trial established that Hatch's violation of its contractual obligations was knowing, unjustified, and harmful to Green Paradise. As the judge observed in denying Hatch's motion for judgment notwithstanding the verdict, Hatch was "paid substantially more than the plaintiff billed for those jobs, yet . . . retained the full payment without paying the plaintiff for [its] work," and it withheld payment without informing Green Paradise "of any discrepancy or other reason why." Nevertheless, those actions, however unseemly, do not rise "to the level of 'commercial extortion' or a similar degree of culpable conduct" required for a c. 93A violation (quotation omitted). Zabin v. Picciotto, 73 Mass. App. Ct. 141, 169 (2008).

8

Because, even when all reasonable inferences are drawn in Green Paradise's favor, the evidence was insufficient to establish a violation of c. 93A, § 11, the jury's verdict and award of double damages on that claim must be reversed. Furthermore, because the judge based her award of attorney's fees and costs to Green Paradise on the jury's finding that Hatch committed an unfair or deceptive act or practice in violation of c. 93A, § 11, that award must also be reversed.

Conclusion.  So much of the corrected judgment as awarded double damages, attorney's fees, and costs under the plaintiffs' c. 93A claim is reversed.  The corrected judgment is modified to dismiss the plaintiffs' c. 93A claim, and, as so modified, the corrected judgment is affirmed.

So ordered.

By the Court (Meade,
  Hershfang & Toone, JJ.[6]),

Clerk

Entered:  October 10, 2024.

---

[6] The panelists are listed in order of seniority.